No. 00-640

IN THE SUPREME COURT OF THE STATE OF MONTANA

2003 MT 90

STATE OF MONTANA,

Plaintiff and Respondent,

v.

LEONARD JEFFERSON,

Defendant and Appellant.

APPEAL FROM:     District Court of the Thirteenth Judicial District,
In and for the County of Big Horn, Cause No. DC 98-34
The Honorable Russell C. Fagg and The Honorable Blair Jones,
Judges presiding.

COUNSEL OF RECORD:

For Appellant:

James L. Vogel, Attorney at Law, Hardin, Montana

For Respondent:

Hon. Mike McGrath, Attorney General; Ilka Becker,
Assistant Attorney General, Helena, Montana

Christine A. Cooke, Big Horn County Attorney, Hardin, Montana

Submitted on Briefs:  November 14, 2002

Decided:  April 21, 2003

Filed:

_____
Clerk

Justice Terry N. Trieweiler delivered the Opinion of the Court.

¶1     The Defendant, Leonard Jefferson, was charged with attempted deliberate homicide in the District Court for the Thirteenth Judicial District in Big Horn County. Following a jury trial, Jefferson was convicted of that charge. He appeals the District Court order that denied his motion to dismiss and appeals his conviction. We vacate Jefferson's conviction and remand this case to the District Court for a new trial.

¶2     Jefferson raises the following issues on appeal:

¶3     1. Did the District Court err when it denied Jefferson's motion to dismiss for lack of a speedy trial?

¶4     2. Did Jefferson's attorney provide ineffective assistance of counsel?

¶5     3. Did the District Court err when it permitted the State to amend the Information on the day of his trial?

¶6     4. Did the District Court err when it denied Jefferson's motion for a new trial?

FACTUAL AND PROCEDURAL BACKGROUND

¶7     On May 18, 1998, the Defendant, Leonard Jefferson, was living with his ex-wife, Felicia Jefferson, and their nine-year-old son. At approximately 2:30 a.m., Jefferson returned to their home intoxicated, and began to argue with Felicia in their bedroom. The argument escalated and Jefferson retrieved his SKS assault rifle from outside of the bedroom. The State contends that Jefferson loaded one round into the chamber of the rifle and placed it beside the bed as the argument continued. Jefferson maintains that he did not load the rifle

2

at that time. He pushed Felicia down on the bed and physically assaulted her with his fist, causing facial cuts.

¶8 Jefferson then placed the barrel of the rifle against Felicia's head and threatened to kill her. He left the bedroom and returned with their nine-year-old son. The State alleges that he also made threats against Felicia and their son at that time. Jefferson's mood changed and he became apologetic. He ceased the attack and placed the barrel of the rifle against his own head and asked Felicia to kill him. Jefferson claims that he loaded one bullet in the chamber just before placing the rifle against his head. At this point Felicia fled from the room with the rifle and her son and went next door to her mother's home.

¶9 Later that morning, Felicia went to the hospital where she received stitches for her lacerations. However, she did not report the incident to the police until May 21, 1998, because she was afraid Jefferson would kill her if she did so. Jefferson had approximately seven months of probation to serve for a prior federal conviction.

¶10 On May 26, 1998, Jefferson was charged by Information with attempted deliberate homicide and entered a not guilty plea at his arraignment. The District Court set his bond at $150,000. The United States filed a petition to revoke Jefferson's probation for violating the terms of his probation. Release on bond was not provided for in that proceeding.

¶11 Trial was scheduled for September 28, 1998. Although neither party filed for a continuance, and Jefferson did not waive his right to a speedy trial, a trial was not held on that date. The delay occurred because the State's evidence against Jefferson had not been returned from the Montana Crime Lab. On December 15, 1998, 203 days after charges were

3

filed, Jefferson filed a motion to dismiss the charges against him for lack of a speedy trial. Jefferson alleged that he had been prejudiced, his relations with his new wife had been impaired, and he lost his job as a result of the delay.

¶12 The District Court rescheduled his trial for February 8, 1999. On that day, Jefferson entered a plea agreement in which he agreed to plead guilty to one count of felony assault in exchange for the State's promise to request a 20 year sentence, to request that the United States withdraw its petition to revoke Jefferson's probation, and not to request persistent felony status in the District Court. The State amended the Information from attempted deliberate homicide to felony assault pursuant to the agreement. However, at Jefferson's request, the District Court granted a continuance pending resolution of his motion to dismiss.

¶13 On February 23, 1999, Jefferson informed Judge Russell Fagg, by letter, that he had entered the plea agreement based upon inadequate advice from his counsel. Consequently, he wished to withdraw his guilty plea and exercise his constitutional right to a trial by jury.

¶14 On April 30, 1999, the District Court concluded that Jefferson had not been prejudiced by the delay of his trial and denied his motion to dismiss. On July 1, 1999, the State requested leave to amend the Information to the original charge of attempted deliberate homicide and requested a trial date. A trial by jury was scheduled for July 12, 1999. On the morning of trial, the State amended the Information to the original charge of attempted deliberate homicide. Following a two-day trial, a jury found Jefferson guilty of that charge. Jefferson's defense counsel was permitted to withdraw as counsel of record two weeks later.

4

Following a psychological evaluation conducted by Dr. William Bredehoft, Jefferson's post-trial attorney moved for a new trial on March 6, 2000. He alleged that Jefferson was entitled to a new trial because the psychological evaluation indicated that he suffered from a mental disease or defect.

¶15    Due to a conflict of interest, Judge Blair Jones substituted for Judge Fagg in the proceeding. Judge Jones denied Jefferson's motion for a new trial and later sentenced him to be committed to the Montana Department of Public Health and Human Services for a period of sixty years. Jefferson contends that the District Court erred when it denied his motion to dismiss for lack of a speedy trial, permitted the State to amend the Information on the day of trial, and refused his motion for a new trial. Jefferson further maintains that he was denied his right to a fair trial because his trial attorney provided ineffective assistance of counsel.

DISCUSSION

ISSUE 1

¶16    Did the District Court err when it denied Jefferson's motion to dismiss for lack of a speedy trial?

¶17    Jefferson contends that he was entitled to have the charges against him dismissed because of the State's delay in bringing him to trial. The State responds that, while it is responsible for the delay, his incarceration was inevitable and Jefferson was not prejudiced.

¶18    Whether a defendant has been denied the right to a speedy trial is a question of constitutional law. *City of Billings v. Bruce*, 1998 MT 186, ¶ 18, 290 Mont. 148, ¶ 18, 965

5

P.2d 866, ¶ 18. We review a district court's conclusions of law to determine whether its interpretation of the law is correct. *Bruce*, ¶ 18.

¶19  A criminal defendant's right to a speedy trial is guaranteed by the Sixth Amendment of the United States Constitution and by Article II, Section 24 of the Montana Constitution. We review speedy trial claims on a case-by-case basis pursuant to the four factors set forth in *Barker v. Wingo* (1972), 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101. *Bruce*, ¶ 19. The four factors are: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of the right to a speedy trial; and (4) the prejudice the delay caused to the defense. *Barker,* 407 U.S. at 530, 92 S.Ct. at 2192; *Bruce*, ¶ 19.

¶20  Our analysis of whether the defendant has been prejudiced considers the harm the right to a speedy trial was intended to prevent. *Barker,* 407 U.S. at 532, 92 S.Ct. at 2193; *Bruce*, ¶ 68. The right to a speedy trial was intended to: (1) prevent pretrial incarceration; (2) minimize anxiety and concern of the defendant; and (3) prevent impairment of the defense. *Barker,* 407 U.S. at 532, 92 S.Ct. at 2193; *Bruce*, ¶ 68.

### 1. Length of Delay

¶21  First, we must consider the length of the delay. A delay of 200 days or more triggers speedy trial analysis. *Bruce*, ¶ 55. The total delay between Jefferson's arraignment and trial was 413 days. Jefferson's motion to dismiss was filed 203 days after he was charged. The delay in this case is sufficient to trigger further analysis of whether Jefferson was denied his right to a speedy trial.

## 2. Reason for Delay

¶22     Second, we consider the reason for the delay. When the delay attributable to the prosecution exceeds 275 days, the burden of proving that the defendant was not prejudiced shifts to the prosecution. *Bruce*, ¶ 56. The State concedes that it is responsible for more than 275 days of the delay. Therefore, we conclude that the State bears the burden of proving that Jefferson was not prejudiced.

## 3. Assertion of Right

¶23     Third, we consider whether Jefferson asserted the right to a speedy trial in a timely fashion. A defendant asserts the right to a speedy trial in a timely manner when a motion to dismiss is filed prior to the commencement of the trial. *Bruce*, ¶ 57. Jefferson filed his motion to dismiss for denial of a speedy trial 203 days after charges were filed and well before a trial was conducted. Consequently, we conclude that Jefferson asserted his right to a speedy trial in a timely manner.

## 4. Prejudice to the Defense

¶24     Our forth consideration is whether Jefferson was prejudiced by the delay in this case. The importance of this factor, and the degree of prejudice required to establish that a defendant was denied his right to a speedy trial, is determined on a case-by-case basis in which we consider the length of the delay and the reason for the delay. *Bruce*, ¶ 58. This inquiry requires that we consider: (1) pretrial incarceration; (2) anxiety and concern of the defendant; and (3) impairment of the defense. *Bruce*, ¶¶ 58, 68. The State should offer proof on the three factors to the extent possible, but at a minimum, it must address whether

the defense has been impaired. *Bruce*, ¶ 56. The fact that pretrial incarceration can hinder a defendant's ability to prepare his defense makes impairment of the defense the most serious consideration in our inquiry.

## A. Pretrial Incarceration

¶25 Jefferson's pretrial incarceration lasted for 413 days; from the day of his arraignment on May 26, 1998, to the day of his conviction on July 14, 1999. The District Court concluded that the pretrial incarceration attributable to the State was mitigated by the fact that the United States filed a petition to revoke Jefferson's probation and, consequently, Jefferson would have been incarcerated for that time period regardless of the State's delay. It concluded any harm caused by the lengthy pretrial incarceration was inevitable.

¶26 On appeal, Jefferson asserts that only seven months remained on his federal probation. Therefore, only seven months of his pretrial incarceration can be mitigated by the United States' petition to revoke his probation. The State counters that Jefferson would have been re-sentenced to prison for violating his probation pursuant to statute. Additionally, it maintains that the delay was primarily institutional and not oppressive in nature and, therefore, not the type of incarceration the speedy trial guarantee is concerned with.

¶27 We recognize that the right to a speedy trial is not intended to prevent all pretrial incarceration. It is designed to prevent oppressive pretrial incarceration. *State v. Longhorn*, 2002 MT 135, ¶ 36, 310 Mont. 172, ¶ 36, 49 P.3d 48, ¶ 36. Our inquiry focuses on whether Jefferson was "*unduly prejudiced* by his pretrial incarceration." *Longhorn*, ¶ 36 (quoting *State v. Johnson*, 2000 MT 180, ¶ 26, 300 Mont. 367, ¶ 26, 4 P.3d 654, ¶ 26).

¶28 There is no dispute that the United States filed a petition to revoke Jefferson's probation and that no bond was provided for. Pursuant to 18 U.S.C. § 3565(b), Jefferson's possession of a firearm mandated the revocation of his probation and further required that Jefferson be re-sentenced to a term of imprisonment. Jefferson testified at trial that his probation officer warned him that he would be sentenced to five or ten years in prison if he possessed a firearm.

¶29 The original trial date was scheduled for September 28, 1998. That date passed because the Crime Lab failed to return the State's evidence in a timely fashion. Jefferson entered a plea agreement on February 8, 1999, the rescheduled trial date. However, rather than enter the Alford plea, Jefferson requested a continuance until the District Court ruled on his speedy trial motion. Therefore, the District Court continued the matter until March 15, 1999. Soon after the plea was agreed to, on February 23, 1999, Jefferson withdrew from the plea agreement and requested a jury trial. The court could not reschedule Jefferson's trial until after it ruled on his motion to dismiss on April 30, 1999.

¶30 While only seven months remained in Jefferson's probation, federal law and the testimony at trial indicate Jefferson would have inevitably been incarcerated for a longer period of time. Furthermore, the record indicates that the initial delay was not intentional and aspects of the subsequent delay were attributable to Jefferson's own actions. We conclude that Jefferson's incarceration was inevitable due to the petition to revoke probation and that the pretrial incarceration in this case was not oppressive and not unduly prejudicial.

## B. Anxiety and Concern

¶31    Jefferson maintains that his pretrial delay caused significant depression and anxiety. The District Court concluded that the presence of anxiety and concern caused by the pretrial delay weighed slightly in favor of Jefferson. Regardless, it concluded that when the other considerations were balanced, the anxiety and concern caused by the delay was insufficient to outweigh the other factors. The State contends that the pending probation revocation was equally responsible for any anxiety and concern that troubled Jefferson during his pretrial incarceration.

¶32    Anxiety and concern are an inherent part of being charged with a crime. Our inquiry considers the extent to which a defendant's anxiety and concern is aggravated by the delay. *Longhorn*, ¶ 38.

¶33    The record indicates that Jefferson was unable to attend to his ill mother, lost his job, and suffered strains on his personal relationships as a result of his pretrial incarceration. However, we noted above that Jefferson's incarceration was inevitable and he was aware he would be re-sentenced by the United States for violating his probation. Consequently, the hardships experienced by Jefferson were also inevitable and only aggravated in part by the State's delay.

¶34    Therefore, we affirm the District Court's conclusion that the anxiety and concern attributable to the delay in Jefferson's trial was slight and is not significant to our analysis.

## C. Impairment of the Defense

¶35 Jefferson contends that his decision to withdraw from the plea agreement for felony assault and go to trial on the attempted homicide charges was irrational and was attributable to the length of his pretrial incarceration. He maintains that this irrational behavior is evidence that he was not thinking clearly and, therefore, his defense was impaired. The District Court concluded that the availability of witnesses and existence of written testimony indicated that it was improbable that Jefferson's defense was impaired as a result of the delay.

¶36 The inquiry into whether the defense has been impaired concerns itself with issues of evidence, witness reliability, and the defendant's ability to prepare a defense. We recognize that pretrial incarceration impedes the defendant's ability to gather evidence and prepare a defense. *Barker*, 407 U.S. at 534, 92 S.Ct. at 2193. Moreover, time may erode the accuracy of witness testimony and exculpatory evidence. Consequently, this factor often carries more weight than the other bases for concluding a defendant has been prejudiced by a pretrial delay. *Longhorn*, ¶ 39.

¶37 The facts indicate that the District Court appointed counsel and an investigator on Jefferson's behalf soon after he was charged. The record further indicates that both of the witnesses to the crime were able to testify at trial and that written testimony had been taken to preserve witness accounts of the incident.

¶38 We conclude that the District Court was correct when it held that the State satisfied its burden of proving that Jefferson's defense was not impaired by the pretrial delay and his

pretrial incarceration. In light of the foregoing considerations, we conclude that Jefferson was not prejudiced by the pretrial delay and incarceration.

## 5. Balancing the Factors

¶39     No single factor in the speedy trial analysis is determinative and each factor must be weighed in light of the facts presented. *Longhorn*, ¶ 44. We conclude that: (1) the length of delay triggered speedy trial analysis; (2) the State bore the burden of proving a lack of prejudice; (3) Jefferson asserted the right to a speedy trial in a timely manner; and (4) the State proved that Jefferson was not prejudiced by the delay. When the speedy trial factors are balanced in this case, we further conclude that Jefferson was not denied his right to a speedy trial. Consequently, we affirm the District Court's denial of Jefferson's motion to dismiss for lack of a speedy trial.

## ISSUE II

¶40     Did Jefferson's attorney provide ineffective assistance of counsel?

¶41     Jefferson alleges that he received ineffective assistance of counsel because his attorney stated that Jefferson was guilty of felony assault in his opening and closing statements. Jefferson further argues that his attorney's failure to conduct a psychological evaluation prior to his trial, in light of his history of mental disease, constitutes ineffective assistance of counsel.

¶42     Claims of ineffective assistance of counsel are mixed questions of law and fact. Therefore, this Court uses *de novo* review. *State v. Turner*, 2000 MT 270, ¶ 47, 302 Mont. 69, ¶ 47, 12 P.3d 934, ¶ 47.

¶43 The right to effective counsel is guaranteed by the Sixth Amendment of the United States Constitution and Article II, Section 24 of the Montana Constitution. A criminal defendant who brings an ineffective assistance of counsel claim bears the burden of proving that: 1) his counsel's representation fell below of the objective standard of reasonableness; and 2) his counsel's failure was prejudicial. *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 67; *State v. Rose*, 1998 MT 342, ¶ 12, 292 Mont. 350, ¶ 12, 972 P.2d 321, ¶ 12.

A. Reasonable Range of Conduct

¶44 The first factor we consider is whether Price's counsel's conduct falls below the objectively reasonable representation demanded by the Sixth Amendment.

¶45 In his opening statement, Jefferson's counsel stated:

> [A]t the end of this case the evidence will show - because Mr. Jefferson will tell you - that he is guilty, no doubt, of a partner/family member assault and perhaps felony assault, but I submit to you . . . that beyond a reasonable doubt you will not find Leonard Jefferson Guilty of attempted deliberate homicide.

¶46 Jefferson's counsel made the following statement in his closing argument: "There is no doubt that [Jefferson] assaulted Felicia. He admitted it. There is no doubt that he pointed a gun. That in and of itself is felony assault." Jefferson maintains that these admissions are indefensible in light of the fact that he could have entered a plea agreement for felony assault and not faced the risk of being convicted for the more serious attempted deliberate homicide charges.

¶47 The State counters that the record is silent as to why Jefferson's counsel admitted guilt and cannot rebut the presumption of adequate assistance. Therefore, Jefferson's reliance upon the result as evidence of incompetence is insufficient to prove that he received inadequate assistance of counsel.

¶48 There is a strong presumption that counsel's conduct falls within the wide range of reasonable professional conduct. *Strickland*, 466 U.S. at 688-89, 104 S.Ct. at 2064-65. "[T]he defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065 (quoting *Michel v. Louisiana* (1955), 350 U.S. 91, 101). The acts or omissions that a defendant alleges were not the product of professional judgment are reviewed by this Court to determine whether "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690, 104 S.Ct. at 2066. Counsel's conduct must be reviewed in consideration of all of the circumstances of the case. *Strickland*, 466 U.S. at 688, 104 S.Ct. at 2065

¶49 When an ineffective assistance of counsel claim is based on facts of record, it is properly raised on direct appeal. *State v. Fields*, 2002 MT 84, ¶ 31, 309 Mont. 300, ¶ 31, 46 P.3d 612, ¶ 31. Normally, the record on appeal must adequately document why counsel acted in a particular manner in order for this Court to determine whether counsel's action falls below the reasonable standard for professional conduct. *State v. Harris*, 2001 MT 231, ¶ 21, 306 Mont. 525, ¶ 21, 36 P.3d 372, ¶ 21.

¶50    The record on appeal does not contain any direct evidence of why Jefferson's counsel made the challenged statements. However, there is no plausible justification for counsel's conduct under these circumstances. Jefferson's letter to Judge Fagg on February 23, 1999, by which he withdrew from his agreement to plead guilty to felony assault, indicates that Jefferson wanted the opportunity to be acquitted, or to be convicted of a less serious offense than felony assault. However, at trial, counsel admitted guilt to felony assault during the opening and closing statements, and undermined the very purpose for which Jefferson withdrew from the plea agreement. His remarks had the effect of entering a plea for Jefferson without his consent and by which the jury was not bound. Counsel's statements directly contravene the reason Jefferson accepted the risk involved in facing the more serious charge of attempted deliberate homicide in a jury trial. Counsel's admission cannot be considered a trial strategy or tactical decision under the circumstances of this case.

¶51    We conclude that counsel's conduct falls below the reasonable range of professional conduct required and that the first element of the *Strickland* test has been satisfied.

### B. Prejudice to Jefferson

¶52    Next, we must determine whether Jefferson was prejudiced by counsel's conduct. Jefferson contends that he was prejudiced because he was ultimately convicted of attempted deliberate homicide when he could have pled guilty to a lesser offense and received a shorter sentence.

¶53    The second prong of the *Strickland* test requires that Jefferson demonstrate the existence of a reasonable probability that, but for counsel's unprofessional conduct, the result

of the proceedings would have been different. *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068. The prejudice inquiry focuses on whether counsel's deficient performance renders the trial result unreliable or the proceeding fundamentally unfair. *Strickland*, 466 U.S. at 696, 104 S.Ct. at 2069. The ultimate inquiry is concerned with the fundamental fairness of the proceeding. *Strickland*, 466 U.S. at 696, 104 S.Ct. at 2069.

¶54 We note that Sixth Amendment criminal proceedings begin with a formal charge, a preliminary hearing, the filing of an information, an indictment, or an arraignment. *State v. Schoffner* (1991), 248 Mont. 260, 265, 811 P.2d 548, 552; *see also Rosebud County v. Finn* (1940), 109 Mont. 537, 98 P.2d 330. To determine whether Jefferson was prejudiced, we must consider the circumstances of the entire proceeding: Jefferson's withdrawal from the plea agreement for felony assault; counsel's admission of guilt in spite of that withdrawal; the evidence at trial; and his final conviction for attempted deliberate homicide. The circumstances in this case present a unique issue. Rather than contemplating the final result absent counsel's conduct, the facts of this case require that we consider how the result of this case affected Jefferson's right to deny guilt to any offense and to have the benefit of the bargain in the event he admitted guilt to a lesser offense.

¶55 In this case, Jefferson withdrew a plea to felony assault for the opportunity to prove he was not guilty, or was guilty of a less serious offense. He had the right to do so. However, his counsel precluded him from making a case for a lesser offense when he initiated the trial with an admission of guilt to felony assault. Consequently, he was denied

16

both his right to deny guilt and the benefit of his previous agreement to admit guilt. He was left with the worst of both options.

¶56   There would have been no reason for Jefferson to withdraw from the plea agreement for felony assault if he had been aware that his counsel would concede his guilt to that charge at trial. Instead, he was convicted of the more serious charge of attempted deliberate homicide. The fact that the evidence at trial may have supported a conviction regardless of the statement is irrelevant. Jefferson would not have gone to trial at all if he had been aware that his counsel would admit he was guilty of felony assault and highlight evidence of that offense at trial.

¶57   We conclude that Jefferson was prejudiced by his counsel's conduct and that his counsel's conduct rendered the criminal proceeding in Jefferson's case fundamentally unfair. We conclude that Jefferson has satisfied the second prong of the *Strickland* test. Consequently, we conclude that Jefferson is entitled to a new trial.

¶58   Our resolution of the second issue in this case is dispositive. Therefore, it is unnecessary to reach the third and fourth issues on appeal. Jefferson's conviction in the District Court is vacated and we remand this case to the District Court for a new trial.

/S/ TERRY N. TRIEWEILER

We Concur:

17

/S/ JIM REGNIER
/S/ PATRICIA COTTER
/S/ JAMES C. NELSON
/S/ W. WILLIAM LEAPHART

Justice Jim Rice concurring in part and dissenting in part.

¶59 I concur with the Court on Issue 1 that the District Court correctly denied Jefferson's motion to dismiss for lack of a speedy trial. I dissent from the Court's decision on Issue 2, and conclude that Jefferson was not prejudiced by his counsel's conduct nor were the criminal proceedings in this matter fundamentally unfair.

¶60 I agree with the Court's conclusion that Jefferson satisfied the first prong of the *Strickland* test, namely, that Jefferson satisfied his burden of showing that his counsel's performance fell below an objective standard of reasonableness by twice admitting to the jury that Jefferson's conduct constituted felony assault. While this Court has repeatedly held that the trial record must adequately document a challenged act or omission and that the record available to this Court on appeal must afford sufficient understanding of the reasons for counsel's act or omission to answer the threshold question of whether the alleged error expresses a trial strategy or tactical decision, *see State v. Harris*, 2001 MT 231, ¶ 21, 306 Mont. 525, ¶ 21, 36 P.3d 372, ¶ 21, I am in agreement with the Court that it is immaterial in this particular case what defense counsel's rationale may have been in admitting Jefferson's guilt to the offense of felony assault.

¶61 Defense counsel's admission of Jefferson's guilt of the offense in the rejected plea agreement left Jefferson in a position that could not possibly be any better than if Jefferson had followed through on the agreement and entered his Alford plea to the charge of felony assault. In other words, defense counsel's admission nullified the purpose for which Jefferson rejected the plea agreement and requested a jury trial: risking conviction of a

19

greater offense but potentially obtaining an acquittal or conviction of an offense less than felony assault. Under these facts, defense counsel's admission of guilt cannot be considered sound trial strategy.

¶62 I conclude, however, that Jefferson failed to satisfy the second prong of the *Strickland* test, and thus, failed to demonstrate that he suffered prejudice from defense counsel's actions. The second prong of the *Strickland* test examines the prejudicial impact of counsel's errors, and required Jefferson to demonstrate the existence of a reasonable probability that the result of the proceedings would have been different absent defense counsel's error in admitting Jefferson's guilt to the charge of felony assault. *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068, 80 L.Ed.2d at 697-98; *Strickler v. Greene* (1999), 527 U.S. 263, 290-91, 119 S.Ct. 1936, 1952, 144 L.Ed.2d 286, 307. As clearly stated by the United States Supreme Court in *Strickland*, an error by counsel, "even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691, 104 S.Ct. at 2066, 80 L.Ed.2d at 696.

¶63 I understand the Court's concern regarding defense counsel's admission to the jury of Jefferson's guilt to a lesser offense than that charged in the Information, as I share the same concern and agree that such admission falls below an objective standard of reasonableness. However, rather than engaging in an analysis of the second prong of the *Strickland* test, the Court bypasses the second prong and states in ¶ 54 that, "[r]ather than contemplating the final result absent counsel's conduct, the facts of this case require that we

consider how the result of this case affected Jefferson's right to deny guilt to any offense and to have the benefit of the bargain in the event he admitted guilt to a lesser offense."

¶64 *Strickland* requires that a reviewing court also contemplate the final result to determine whether the defendant suffered prejudice, and the Court here is erroneously bypassing this requirement. In the instant case, Jefferson was ultimately convicted of a greater charge than that offered in the rejected plea agreement and a greater charge than the one admitted to by defense counsel. In light of Jefferson's conviction of attempted deliberate homicide, Jefferson clearly did not "suffer the results of his counsel's trial admission" that his conduct amounted to felony assault, and Jefferson failed to demonstrate that there existed a reasonable probability that the result of the proceedings would have been different absent defense counsel's professionally unreasonable error. *See Strickland*, 466 U.S. at 694, 104 S.Ct. at 2088, 80 L.Ed.2d at 697-98; *Strickler,* 527 U.S. at 291, 119 S.Ct. at 1953, 144 L.Ed.2d at 308.

¶65 While the Court concludes that defense counsel's admission of Jefferson's guilt to felony assault rendered the proceedings fundamentally unfair, thus precluding the need to contemplate the final result in light of defense counsel's conduct, such conclusion amounts to a finding of "per se" prejudice in this circumstance. Such conclusion is unwarranted and inconsistent with United States Supreme Court precedent.

¶66 Initially, I note that it is elementary that no matter how uncontroverted the State's evidence, the Montana and the United States Constitutions guarantee a defendant the right to have his guilt determined by a jury of his peers. *See* Article II, Sections 24 and 26,

21

Montana Constitution; *State v. DeVore*, 1998 MT 340, ¶ 39, 292 Mont. 325, ¶ 39, 972 P.2d 816, ¶ 39 (overruled on other grounds); *see also United States v. Mentz* (6th Cir. 1988), 840 F.2d 315, 319 ("[t]he Sixth Amendment to the Constitution guarantees to a defendant the opportunity for a jury to decide guilt or innocence") (citing *Duncan v. Louisiana* (1968), 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491). The decision to plead guilty or not guilty is reserved solely for the accused based on his or her intelligent and voluntary choice and waiver of numerous constitutional protections. *See State v. Boucher*, 2002 MT 114, ¶¶ 22-23, 309 Mont. 514, ¶¶ 22-23, 48 P.3d 21, ¶¶ 22-23; *see also Wiley v. Sowders* (6th Cir. 1981), 647 F.2d 642, 649-50 ("In those rare cases where counsel advises his client that the latter's guilt should be admitted, the client's knowing consent to such trial strategy must appear outside the presence of the jury on the trial record . . . .") (citing *Boykin v. Alabama* (1969), 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274). "Similarly, an attorney may not admit his client's guilt which is contrary to his client's earlier entered plea of 'not guilty' unless the defendant unequivocally understands the consequences of the admission." *Wiley*, 647 F.2d at 649 (citing *Brookhart v. Janis* (1966), 384 U.S. 1, 8, 86 S.Ct. 1245, 1249, 16 L.Ed.2d 314).

¶67     In *Wiley*, defense counsel, in closing argument, repeatedly and unequivocally admitted the guilt of both defendants to the offenses charged. Such admission runs counter to the constitutional right to effective assistance of counsel because the right to effective assistance "envisions counsel's playing a role that is critical to the ability of the adversarial system to produce just results." *Strickland*, 466 U.S. at 685, 104 S.Ct. at 2063, 80 L.Ed.2d at 692

22

(citations omitted). Defense counsel's admission of guilt denied the defendant the right to have guilt or innocence decided by a jury. Further, as stated in *Wiley*, "[p]etitioner, in pleading not guilty, was entitled to have the issue of his guilt or innocence presented to the jury as an adversarial issue. Counsel's complete concession of petitioner's guilt nullified the adversarial quality of this fundamental issue." *Wiley*, 647 F.2d at 650.

¶68 The United States Supreme Court, in both *Strickland* and *United States v. Cronic* (1984), 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657, identified specific factual situations involving easily identifiable impairment of Sixth Amendment rights where prejudice is presumed because prejudice in such a situation is so likely that case-by-case inquiry into prejudice is not worth the cost. *Strickland*, 466 U.S. at 692, 104 S.Ct. at 2067, 80 L.Ed.2d at 696 ("prejudice is presumed when counsel is burdened by an actual conflict of interest") (citation omitted); *see also Cronic*, 466 U.S. at 656-57, 104 S.Ct. at 2045-46, 80 L.Ed.2d at 666-67 ("When a true adversarial criminal trial has been conducted–even if defense counsel may have made demonstrable errors–the kind of testing envisioned by the Sixth Amendment has occurred. But if the process loses its character as a confrontation between adversaries, the constitutional guarantee is violated").

¶69 Relying on *Cronic* and *Strickland*, the Illinois Supreme Court in *People v. Hattery* (Ill. 1985), 488 N.E.2d 513, held that a concession of a defendant's guilt by defense counsel, thereby failing to subject the prosecution to the meaningful adversarial testing required by the Sixth Amendment, constitutes *per se* ineffective assistance of counsel abdicating the need to apply the *Strickland* test. *Hattery*, 488 N.E.2d at 518-19. The Court subsequently

23

narrowly construed the *Hattery* holding in *People v. Johnson* (Ill. 1989), 538 N.E.2d 1118, to be more consistent with the language set forth by the United States Supreme Court in *Cronic*, to situations where defense counsel entirely failed to subject the prosecution's case to meaningful adversarial testing, rather than simply to situations where defense counsel concedes to the defendant's guilt. *Johnson*, 538 N.E.2d at 1125; *see Cronic*, 466 U.S. at 656-57, 104 S.Ct. at 2045-46, 80 L.Ed.2d at 666-67.

¶70     The present case is unlike *Wiley* or *Hattery* in that defense counsel for Jefferson did not admit Jefferson's guilt to the offense charged in the Information, but admitted guilt to a lesser offense. Such admission to a lesser offense may not normally be of constitutional import, as defense counsel must often work with facts to which there is no bona fide defense, and neither the Sixth Amendment nor Article II, Section 24, require that counsel do what is impossible or unethical. Such admission, therefore, may be an objectively reasonable tactical decision where defense counsel is presented with a factual situation which affords limited possible bona fide strategies, and where the best strategy may be to argue that the defendant is guilty of a lesser offense than that charged in the Information. Ostensibly, defense counsel may do his or her client a disservice in such a situation by attempting to create a defense that does not exist. "At the same time [however], even when no theory of defense is available, if the decision to stand trial has been made, counsel must hold the prosecution to its heavy burden of proof beyond reasonable doubt. And, of course, even when there is a bona fide defense, counsel may still advise his client to plead guilty if that advice falls within the range

24

of reasonable competence under the circumstances." *Cronic*, 466 U.S. at n. 19, 104 S.Ct. at n. 19, 80 L.Ed.2d at n. 19.

¶71 Upon review of the trial transcript, it is clear that the State's witnesses as well as Jefferson's own testimony was very damaging to Jefferson's case, and that defense counsel's admission of guilt to the offense of felony assault was likely a tactical decision based upon the small amount of disputed testimony in Jefferson's favor. Such assumption is especially likely considering defense counsel's use of Jefferson's candor to argue a strong case for Jefferson's honesty in all of his testimony. The transcript reveals that the State presented strong evidence at trial that Jefferson hit Felicia and pointed his assault rifle at her while threatening to kill her. Jefferson himself not only did not deny doing these things, but admitted to the acts when he chose to testify.

¶72 Aside from admitting Jefferson's guilt to the lesser offense of felony assault, Jefferson's counsel also pursued an adversarial posture in an attempt to achieve just results, as guaranteed by Article II, Section 24, and the Sixth Amendment, when he attempted to refute the evidence that the gun was loaded by cross-examination of State witnesses and on direct with Jefferson's testimony. Ostensibly, therefore, Jefferson's counsel did not entirely fail to subject the prosecution's case to meaningful adversarial testing, and there is, therefore, no "per se" ineffective assistance based upon defense counsel's actions.

¶73 The record reveals that it was Jefferson's own decision to reject the plea agreement and forgo entering an Alford plea to the offense of felony assault in an attempt to receive an acquittal or conviction of a lesser offense while exposing himself to the greater risk of

25

conviction of attempted deliberate homicide. He does not dispute this intention on appeal. Had Jefferson been convicted of the offense admitted to by defense counsel, Jefferson would be arguing from a different vantage point. However, I find it significant that the jury convicted Jefferson of an offense greater than the felony assault admitted by defense counsel.

¶74 In ¶ 56, the Court states that there "would have been no reason for Jefferson to withdraw from the plea agreement for felony assault if he had been aware that his counsel would concede his guilt to that charge at trial." This statement is more qualitative than objective. A truer statement would be that there would have been no "good" reason for Jefferson to withdraw from the plea agreement if he had been aware that his counsel would concede his guilt to felony assault at trial. The record does not reveal whether Jefferson was aware or unaware of defense counsel's specific strategy to utilize Jefferson's honesty, in admitting to the actions constituting the felony assault, to argue that Jefferson was also testifying honestly that the gun was unloaded when he pointed it at Felicia.

¶75 Regardless, whether Jefferson knew of defense counsel's specific strategy and whether he had a good reason for agreeing to such strategy, is immaterial. Jefferson failed to meet his burden of demonstrating that the result of the trial would have been different but for defense counsel's error. While the Court further states in ¶ 56 that "Jefferson would not have gone to trial at all if he had been aware that his counsel would admit he was guilty of felony assault and highlight evidence of that offense at trial," such conclusion is something that we simply cannot know from the record before this Court. Concluding that Jefferson

26

suffered prejudice as a result of defense counsel's actions amounts to an unwarranted finding of per se prejudice.

¶76 I conclude, therefore, that defense counsel's admission of guilt to the offense of felony assault does not warrant setting aside the judgment of the criminal proceeding, as the jury convicted Jefferson of a charge greater than that admitted to the jury by defense counsel. I further conclude that Jefferson has failed to demonstrate that, but for defense counsel's errors, there was a reasonable probability that the result of the trial would have been different. I would therefore hold that Jefferson has failed to satisfy the second prong of the *Strickland* test as properly applied, and would affirm his conviction.


/S/ JIM RICE

Chief Justice Karla M. Gray joins in the concurring and dissenting opinion of Justice Rice.


/S/ KARLA M. GRAY