No. 03-553

IN THE SUPREME COURT OF THE STATE OF MONTANA

2004 MT 173

STATE OF MONTANA,

        Plaintiff and Respondent,

   v.

ALAN B. HENDERSON,

        Defendant and Appellant.

APPEAL FROM:    District Court of the Fourth Judicial District,
                    In and For the County of Missoula, Cause No. DC 96-12063,
                    Honorable John W. Larson, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

        William Boggs, Attorney at Law, Missoula, Montana

        For Respondent:

        Honorable Mike McGrath, Attorney General; Jim Wheelis, Assistant
        Attorney General, Helena, Montana

        Fred Van Valkenburg, County Attorney; Suzy Boylan, Deputy County
        Attorney, Missoula, Montana

Submitted on Briefs:  March 3, 2004

Decided:  June 30, 2004

Filed:

_____
                      Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1     Henderson was charged with criminal possession of dangerous drugs. He pled guilty to the charge and received a five-year sentence. Afterwards, Henderson filed a petition for postconviction relief asserting the ineffective assistance of counsel. The Missoula County Public Defender's office opposed his petition, and the District Court appointed other counsel for Henderson. After an evidentiary hearing, the District Court denied Henderson's petition for relief. He now appeals the District Court's denial of relief. We reverse the District Court.

¶2     The underlying facts of the original charge stem from a traffic stop of a suspected DUI at 4:25 a.m. on March 14, 1996; Henderson was the passenger. One of the sheriff's officers performing the stop reported that he observed an empty and unlabeled pill bottle on the floor of the vehicle. After asking Henderson to step out of the vehicle, the officer saw six yellow-colored pills on the seat. Henderson claims that he did not know the pills were there and that the pills were not his, but rather, belonged to the driver. The officer seized the pills, placed Henderson in the back of his patrol car and drove to St. Patrick's Hospital, where the pharmacist identified the pills as dextroamphetemine sulfite, a controlled narcotic. The officer then took Henderson to the jail, where it was discovered that he was on probation. Henderson was booked, and, during a routine search, white pills and yellow pills were found in his pocket. Those pills were never identified. Henderson claims the pills in his pocket were planted.

2

¶3     Henderson's sole issue on appeal is that the District Court abused its discretion in denying his assertion that he received ineffective assistance of counsel. Claims of ineffective assistance of counsel are mixed questions of law and fact. *Strickland v. Washington* (1984), 466 U.S. 668, 698, 104 S.Ct. 2052, 2070, 80 L.Ed.2d 674, 700.  Therefore, our review is *de novo*. *State v. Jefferson*, 2003 MT 90, ¶ 42, 315 Mont.146, ¶ 42, 69 P.3d 641, ¶ 42.

¶4     The Due Process clause requires that the trial process be fair.  The requirements of the Sixth Amendment ensure the fairness of the procedure:

> In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defense.

U.S. Const. amend. VI;  *Strickland*, 466 U.S. at 685, 104 S.Ct. at 2063, 80 L.Ed.2d at 691-92. The right to counsel is also guaranteed under the Montana Constitution, Article II, Section 24.  The effective assistance of counsel is critical to our adversarial system of justice; a lack of effective counsel may impinge the fundamental fairness of the proceeding being challenged.  *Strickland,* 466 U.S. at 687, 696, 104 S.Ct. at  2064, 2069, 80 L.Ed.2d at 693, 699.  We have adopted the two-part Strickland test for measuring claims of ineffective assistance of counsel. *State v. Boyer* (1985), 215 Mont. 143, 147, 695 P.2d 829, 831.  Under the first part, a defendant must show that counsel's performance was deficient.  Second, the defendant must show that he was prejudiced by counsel's deficient performance.  The

defendant must show within a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different.

¶5      Under the first part of the *Strickland* test, a petitioner must show that counsel made such serious errors that counsel was not functioning as the "counsel" guaranteed under both the United States and Montana Constitutions.  Our standard is highly deferential to the actions of the attorney, eschewing the distorting effects of hindsight.  We indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.  Under the first part, we require a record establishing the reasoning, or the *why* of an attorney's strategic decisions.  *State v. Turnsplenty*, 2003 MT 159, ¶ 17, 316 Mont. 275, ¶ 17, 70 P.3d 1234, ¶ 17.  The deference given on review to an attorney's strategic decisions is such that we rarely grant relief if there is some evidence that the decision was strategic.  However, when the attorney makes no decision or exercises no discretion, we give little deference. In *State v. Rose,* 1998 MT 342, ¶ 18, 292 Mont. 350, ¶ 18, 972 P.2d 321, ¶ 18,  we could discern no tactical advantage to the attorney's actions when the attorney failed to request a jury instruction to view an accomplice's testimony with distrust, and we concluded the first part of the *Strickland* test was met.  Similarly, it was outside the range of competence required of attorneys in criminal cases when the attorney, for no strategic reason, neglected to request a "failure to agree" jury instruction which would have allowed the jury to consider a lesser included offense before first acquitting the defendant of the greater charge.  *State v. Rogers,* 2001 MT 165, ¶ 13, 306 Mont. 130, ¶ 13, 32 P.3d 724, ¶ 13. In *State v. Jefferson,* 2003 MT 90, ¶ 50, 315 Mont. 146, ¶ 50, 69 P.3d 641, ¶ 50, no plausible

justification existed for an attorney admitting to the defendant's guilt on a lesser included offense during the opening statement, because the admission undermined the defendant's purpose in previously withdrawing his guilty plea and going to trial.

¶6     In the present case, Henderson's counsel was appointed to represent Henderson in March of 1996. Counsel only met with Henderson twice. At the first meeting in March, Henderson explained that he was innocent and that the contraband was not his. At the postconviction hearing, Henderson's counsel testified that he performed no investigation, research or analysis, nor did he file any pretrial motions. Counsel's file on Henderson reveals that he performed a total of four hours of work on Henderson's case. The four hours included clerical work such as preparing transport orders, appearing on behalf of Henderson, and then appearing with Henderson at the final change of plea hearing. One quarter of Henderson's counsel's time on the case, about one hour, was spent persuading Henderson to plead guilty. Henderson's counsel would only have spent one-half hour in this endeavor, but he had to repeat the process when Henderson's initial change of plea was not accepted. The sum total of counsel's legal work on Henderson's behalf is that he asked the county attorney to propose a plea bargain and then signed the prosecution's first offer on June 8. Under the plea bargain, the recommended sentence was for five years to the Department of Corrections. Henderson's counsel then sent Henderson a copy of the plea bargain on June 28, with a letter which stated: "Please let me know if you are going to accept the plea bargain. If you do not, you will go to trial on September 9, 1996." At the status conference on August 26, without having heard from Henderson, his counsel advised the court that

Henderson wished to change his plea to guilty. At the change of plea hearing, Henderson pled guilty, but denied the elements of the crime asserting lack of knowledge that the pills were there and that the pills were really owned by the car's driver. In response, the county attorney indicated the plea was unacceptable, and that if Henderson did not wish to make an acceptable guilty plea, the prosecution could be ready to go to trial in forty-eight hours. The county attorney also indicated he would be inclined to seek increased punishment of Henderson as a persistent felony offender. After a recess during which Henderson's counsel explained an Alford plea, Henderson pled guilty to the charge.

¶7      The overarching duty of a criminal defense counsel is to advocate on behalf of the defendant, to meet, test and refute the case of the prosecution. Henderson's counsel, however, disregarded the statements and wishes of his client, while accepting as true all of the statements of law enforcement. Indeed, he did nothing more than request a plea agreement and facilitate the conviction of his client without a trial. In claims of ineffective assistance of counsel, we apply the highly deferential standard of *Strickland* to all strategic decisions, recognizing the inherent artistry in the practice of law, because no two attorneys would defend a particular client in the same way. *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065, 80 L.Ed.2d at 695. However, we are not presented with counsel's strategic decisions, but rather, the complete failure of counsel to honor his duty to investigate the case. *State v. Denny* (1993), 262 Mont. 248, 252-53, 865 P.2d 226, 228-29. Moreover, Henderson's counsel utterly failed to advocate for his client in any meaningful way. For example, when it appeared that Henderson would not enter an acceptable guilty plea and would force a trial,

the prosecutor threatened Henderson with persistent felony offender status, even though the prosecution would have been procedurally barred from filing such a notice at that late date. Further, the prosecution indicated it could be ready to go to trial in two day's time. Yet, Henderson's counsel failed to challenge the State's threat to seek persistent felony offender status or to disabuse Henderson of any concerns engendered by this threat.

¶8 The assistance of counsel as contemplated by the United States and Montana Constitutions contemplates that counsel do more than merely accompany the accused in court. Counsel must give assistance in the role of advocate, a role which is critical to just results in our adversarial system of justice. *Strickland*, 466 U.S. at 685, 104 S.Ct. at 2063, 80 L.Ed.2d at 692. In reviewing acts of attorney neglect or ignorance, we accord no deference. *Hans v. State* (1997), 283 Mont. 379, 382, 942 P.2d 674, 682. The errors and omissions of Henderson's counsel were sufficiently serious that he was not functioning as the "counsel" guaranteed by the Sixth Amendment of the United States Constitution and Article II, Section 24, of the Montana Constitution. Henderson has therefore established the first part of *Strickland*, the deficient performance of counsel.

¶9 The second part of the *Strickland* test requires the petitioner to show that counsel's deficient performance prejudiced the defense, that the errors were so serious as to deprive the defendant of a fair trial. In the context of a guilty plea, a petitioner establishes prejudice by showing that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. *Hill v. Lockhart* (1985), 474 U.S. 52, 59, 106 S.Ct. 366, 370, 88 L.Ed.2d 203, 210. "Prejudice" is a reasonable

7

probability that the defendant would have insisted on going to trial had he not received ineffective assistance, and a "reasonable probability" is a probability sufficient to undermine confidence in the outcome. *Ostrander v. Green* (4th Cir. 1995), 46 F.3d 347, 355, citing *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068, 80 L.Ed.2d at 698. The prejudice analysis takes into account the potential strength of the state's case, as well as the likelihood of success of the actions counsel failed to take. *Hill,* 474 U.S. at 59-60, 106 S.Ct. at 371, 88 L.Ed.2d at 210-11.

¶10     Other states apply an objective standard to measure the establishment of prejudice as contemplated by *Hill*. In *State v. Ysea* (Ariz. 1998), 956 P.2d 499, the defendant's counsel was operating under the erroneous belief that the defendant risked the death penalty if he went to trial, even though, as a matter of law, the death penalty was not a possibility. Counsel convinced his client to plead guilty pursuant to a plea bargain in order to avoid the death penalty. The Arizona Supreme Court applied the objective reasonable defendant standard to conclude that fear of the death penalty would have been a primary concern in motivating the defendant to plead guilty. This was sufficient to undermine the court's confidence in the plea, even though the defendant could not demonstrate a likelihood of success on the merits. Notably, the court recognized that the right to go to trial is the right of a defendant to take his chances on being found guilty, not guilty, or guilty of a lesser included offense. *Ysea*, 956 P.2d at 505. The Supreme Court of Georgia similarly allowed the withdrawal of a guilty plea based on ineffective assistance of counsel upon a showing of erroneous legal advice as to the collateral consequences of a guilty plea. *Rollins v. State* (Ga.

8

2004), 591 S.E.2d 796. The Georgia court rejected the argument that the entry of the guilty plea foreclosed the defendant's ability to show she was harmed by erroneous advice, because the entry of the guilty plea was itself the resulting prejudice. *Rollins*, 591 S.E.2d at 800.

¶11 The Supreme Court of Appeals of West Virginia ordered the setting aside of a guilty plea where defense counsel had not performed an adequate or reasonable investigation. *State ex rel. Strogen v. Trent* (W.Va. 1996), 469 S.E.2d 7. The Court focused on counsel's failure to make a motion to suppress the defendant's statement as sufficient in and of itself to show that counsel lacked command of all the facts and circumstances surrounding the petitioner's statement. The record indicated that counsel's decision not to file a suppression motion was based solely on his review of the prosecution's file. Even though Strogen had admitted his guilt and had pled guilty, the Court concluded Strogen had been prejudiced and ordered the setting aside of his guilty plea and conviction.

¶12 In determining whether a reasonable defendant would have pleaded guilty or if he would have insisted on going to trial, we must look at the surrounding facts and circumstances. Here, according to the police reports, the officer first viewed the pills on the car seat after he asked Henderson to step out of the car. The alleged contraband was only visually identified by a pharmacist. The arresting officers did not know that Henderson was on parole until after he had been arrested. Lastly, the pills from his pocket were never actually identified.

¶13 Based on these facts, Henderson claims there were obvious issues as to the legality of the arrest and asserts that the State would not have been able to identify the contraband or prove the elements of constructive possession. Henderson also presented expert testimony

that a mere thirty minutes of research in a standard treatise on fourth amendment criminal defense revealed a colorable defense based on the proposition that not everyone at the scene of a crime is necessarily a party to the crime. However, we need not address the actual merits of whether a motion based on the defense's theory would ultimately be successful; rather, the issue is presented to illustrate there was at least one colorable argument in favor of Henderson's position.

¶14 Furthermore, at his initial attempt to plead guilty, Henderson essentially asserted his actual innocence by denying the elements of the crime. Only when faced with the threat of a trial in a very short time with a possible persistent felony offender sentence of up to 100 years and knowing that his counsel had done nothing to assist him and was unprepared for such a trial did Henderson ultimately enter an *Alford* plea, whereby he continued to assert his actual innocence but admitted he would likely be found guilty.

¶15 In addressing the prejudice prong of the *Strickland-Hill* test, we pose the following inquiry: do we remain confident that a reasonable defendant in Henderson's shoes, with the benefit of counsel's diligent investigation of facts and applicable law and appropriate pre-trial motions, would have pleaded guilty anyway had he known that trial was not likely to occur in two hours' time or in two days' time, and that persistent felony offender status with its possible 100-year sentence was not a possibility without a showing of good cause by the prosecution?

¶16 The simple answer is that we lack that confidence. Reasonable people will naturally seek freedom from restraint. Although Henderson agreed to a plea bargain with the maximum sentence of five years, he did so to avoid a potentially far more lengthy persistent

felony offender sentence. Counsel's failures to subject any portion of the prosecution's case to the crucible of meaningful adversarial testing or to advocate for his client in any meaningful way casts the fairness of the proceeding into doubt. Henderson's decision to enter an *Alford* plea was clearly influenced by the lack of effective assistance of counsel. But for the ineffective assistance of his counsel, Henderson would not have entered a guilty plea. This satisfies the prejudice prong of *Strickland-Hill*.

¶17 Pursuant to § 46-16-105(2), MCA, a defendant is authorized to withdraw a guilty plea for good cause shown. The "good cause" requirement is satisfied if a petitioner can show both prongs of *Strickland,* the ineffective assistance of counsel and the resulting prejudice to the petitioner. *State v. Lawrence*, 2001 MT 299, ¶ 12, 307 Mont. 487, ¶ 12, 38 P.3d 809, ¶ 12. Having established both prongs, Henderson must be allowed to withdraw his guilty plea and proceed to trial. We reverse the District Court's denial of postconviction relief and remand for proceedings consistent with this opinion.

/S/ W. WILLIAM LEAPHART

We concur:

/S/ PATRICIA O. COTTER
/S/ JIM REGNIER
/S/ JIM RICE

11

Justice John Warner dissenting.

¶18     If one examines only a part of the record it appears that counsel for Mr. Henderson could have spent more time and effort in representing his client. The entire record does not show that, under the circumstances, counsel's representation was deficient. Most importantly, the Court's analysis concerning whether Mr. Henderson suffered any prejudice because his counsel did not spend more time on the case does not reflect what a fair reading of the record actually shows. I must dissent.

¶19     The hearing on the petition for postconviction relief was held six years after the plea hearing and, as would be expected, counsel for Mr. Henderson could not remember the details of all of the events that occurred. The testimony of the attorney who appeared at the hearing on postconviction relief as an expert witness for Mr. Henderson only attacked the performance of his original counsel.

¶20     The record shows that Mr. Henderson was very familiar with the criminal justice system. He was convicted of aggravated assault in the late 1970's. He was convicted of sexual assault and sent to prison in 1989 and paroled in 1995. He had been charged with a DUI offense after being released on parole, and he was arrested for the present offense in March of 1996.

¶21     Because of his arrest on the charge in question, and his DUI arrest, Henderson's parole was revoked. It is clear from the record that a major reason his counsel was unable to meet with Henderson in person was because he was in the Montana State Prison. It is also clear that counsel did have contact by letter with Henderson while he was at the prison, and

counsel could not remember if there was further contact. Henderson presented no evidence that there were not further conferences between himself and his attorney.

¶22    The record also indicates that it was Henderson who requested a plea agreement. After Henderson's counsel solicited a plea agreement on the instruction of his client, such was offered by the county attorney and a written agreement form was sent to Henderson at Deer Lodge. There is no indication that he did not receive this agreement, that he did not understand it, or that he objected to its terms.

¶23    At the time of the plea hearing back on September 11, 1996, Henderson complained that he had not spent much time with his counsel, but said that he accepted the representation. He did say that the contraband pills were not his. Thus, the agreement for a guilty plea was discarded and the court and counsel discussed a trial date. A recess in the proceedings was ordered so that Henderson and his counsel could discuss the matter, and a date for trial could be arranged. The record is clear that counsel did not believe the trial would occur within a couple of days. There is no evidence whatever that the prosecution's offer of a quick trial was a reasonable possibility. The District Court found as a matter of fact in its order denying postconviction relief that defense counsel was correct in his opinion, which was formed back in 1996, that the trial would not have been so quick. The record does not support the proposition that the offer of a quick trial had any coercive effect on Henderson whatever.

¶24    The off-hand statement of the county attorney that he might consider asking the court for permission to file a notice of intent to declare Henderson a persistent felony offender may or may not have been the subject of a discussion between Henderson and his counsel during

the recess. Counsel did not remember, and Henderson did not testify. What is known is that Henderson qualified as a persistent felony offender, and that procedurally the prosecution could not seek such status without a further court hearing. Certainly, Henderson has not presented any evidence that he was unduly coerced by the county attorney's statement.

¶25 As noted, after determining that a guilty plea was inappropriate, the court recessed so that Henderson could consult with his counsel. At that juncture in the proceedings Henderson was in no way bound by the plea agreement, had a right to go to trial, had all the time he wanted to discuss the matter with his lawyer, and to make a decision as to whether he wished to stand on his plea of not guilty and have a trial date set, to plead guilty at that time, or plead guilty later. Then, after Henderson's consultation with his lawyer, the parties returned to the courtroom, counsel announced that Henderson had decided he would enter an "Alford Plea," and he did so. The court then determined that the plea, which was not an admission of guilt but an admission that the State had enough evidence to convict, was made with knowledge of the consequences and was voluntary. Of course, not only did Henderson have considerable knowledge of the procedures because of his previous experiences, he had in this case signed a writing that acknowledged he was aware of his rights.

¶26 The sentence imposed was exactly what the parties bargained for. A commitment to the Department of Corrections for five years for placement in an appropriate facility or program, which gave Henderson the possibility of placement outside the wall after his sexual assault sentence was discharged or he made parole.

14

¶27 In this proceeding for postconviction relief, Henderson presented no evidence of a reasonable possibility that the pills in question were not contraband, that his arrest was illegal, or that a dispositive motion was available to him. The record is simply devoid of any real evidence that Henderson's plea was not voluntary.

¶28 Henderson, in effect, pled guilty. When a guilty plea is at issue, rather than a verdict of guilty, before any deficient performance of counsel results in a constitutional violation, the defendant must demonstrate that but for such deficient performance he would not have pled guilty and would have insisted on going to trial. *State v. Senn* (1990), 244 Mont. 56, 59, 795 P.2d 973, 975, citing *Hill v. Lockhart* (1985), 474 U.S. 52, 59, 106 S.Ct. 366, 370, 88 L.Ed.2d 203, 210. To establish a constitutional violation of the right to the effective assistance of counsel in the entry of a guilty plea, the evidence must show that there is a reasonable probability that, but for counsel's errors, he would not have pled guilty. A reasonable probability is one that is sufficient to undermine confidence in the outcome. *State v. Turner*, 2000 MT 270, ¶ 65, 302 Mont. 69, ¶ 65, 12 P.3d 934, ¶ 65. In my view, this means more than a reviewing court would like to have seen a better job of representation. It means that there is some real evidence that the outcome would have been different if the lawyer would have done better. The standard is that more is required than the possibility of some influence on defendant. It is a standard that requires evidence to show that it is probable that a defendant would not have pled guilty.

¶29 Henderson has presented only evidence attacking the performance of counsel prior to the time of the hearing on September 11, 1996. He presented no evidence that would

15

undermine confidence in the ultimate outcome of the case. Contrary to the bold statements of the Court, he presented nothing that indicates he was influenced by any lack of prior contact with counsel. Not only is there no evidence to the contrary, the record supports the proposition that with knowledge of the real facts surrounding the charge of possession of dangerous drugs, and with knowledge of the probable outcome, Henderson made a conscious and informed decision to admit that the prosecution had enough evidence to convict him.

¶30     It is the obligation of the defendant on a complaint of ineffective assistance of counsel to affirmatively show that he was prejudiced by the alleged errors. *Strickland v. Washington* (1984), 466 U.S. 668, 693, 104 S.Ct. 2052, 2067, 80 L.Ed.2d 674. Contrary to established precedent, the decision of the Court makes the prosecution responsible for alleged attorney errors that it had no means to prevent, and results in reversal of a conviction over eight years later. I dissent.

/S/ JOHN WARNER