JUSTICE LEAPHART
delivered the Opinion of the Court.
¶1 Henderson was charged with criminal possession of dangerous drugs. He pled guilty to the charge and received a five-year sentence. Afterwards, Henderson filed a petition for postconviction relief asserting the ineffective assistance of counsel. The Missoula County Public Defender’s office opposed his petition, and the District Court appointed other counsel for Henderson. After an evidentiary hearing, the District Court denied Henderson’s petition for relief. He now appeals the District Court’s denial of relief. We reverse the District Court.
¶2 The underlying facts of the original charge stem from a traffic stop of a suspected DUI at 4:25 a.m. on March 14,1996; Henderson was the passenger. One of the sheriffs officers performing the stop reported that he observed an empty and unlabeled pill bottle on the floor of the vehicle. After asking Henderson to step out of the vehicle, the officer saw six yellow-colored pills on the seat. Henderson claims that he did not know the pills were there and that the pills were not his, but *71 rather, belonged to the driver. The officer seized the pills, placed Henderson in the back of his patrol car and drove to St. Patrick’s Hospital, where the pharmacist identified the pills as dextroamphetemine sulfite, a controlled narcotic. The officer then took Henderson to the jail, where it was discovered that he was on probation. Henderson was booked, and, during a routine search, white pills and yellow pills were found in his pocket. Those pills were never identified. Henderson claims the pills in his pocket were planted.
¶3 Henderson’s sole issue on appeal is that the District Court abused its discretion in denying his assertion that he received ineffective assistance of counsel. Claims of ineffective assistance of counsel are mixed questions of law and fact. Strickland v. Washington (1984), 466 U.S. 668, 698, 104 S.Ct. 2052, 2070, 80 L.Ed.2d 674, 700. Therefore, our review is de novo. State v. Jefferson, 2003 MT 90, ¶ 42, 315 Mont. 146, ¶ 42, 69 P.3d 641, ¶ 42.
¶4 The Due Process clause requires that the trial process be fair. The requirements of the Sixth Amendment ensure the fairness of the procedure:
In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defense.
U.S. Const, amend. VI; Strickland, 466 U.S. at 685, 104 S.Ct. at 2063, 80 L.Ed.2d at 691-92. The right to counsel is also guaranteed under the Montana Constitution, Article II, Section 24. The effective assistance of counsel is critical to our adversarial system of justice; a lack of effective counsel may impinge the fundamental fairness of the proceeding being challenged. Strickland, 466 U.S. at 687, 696, 104 S.Ct. at 2064, 2069, 80 L.Ed.2d at 693, 699. We have adopted the two-part Strickland test for measuring claims of ineffective assistance of counsel. State v. Boyer (1985), 215 Mont. 143, 147, 695 P.2d 829, 831. Under the first part, a defendant must show that counsel’s performance was deficient. Second, the defendant must show that he was prejudiced by counsel’s deficient performance. The defendant must show within a reasonable probability that, but for counsel’s deficient performance, the result of the proceeding would have been different. ¶5 Under the first part of the Strickland test, a petitioner must show that counsel made such serious errors that counsel was not functioning *72 as the “counsel” guaranteed under both the United States and Montana Constitutions. Our standard is highly deferential to the actions of the attorney, eschewing the distorting effects of hindsight. We indulge a strong presumption that counsel’s conduct falls within the wide range of reasonable professional assistance. Under the first part, we require a record establishing the reasoning, or the why of an attorney’s strategic decisions. State v. Turnsplenty, 2003 MT 159, ¶ 17, 316 Mont. 275, ¶ 17, 70 P.3d 1234, ¶ 17. The deference given on review to an attorney’s strategic decisions is such that we rarely grant relief if there is some evidence that the decision was strategic. However, when the attorney makes no decision or exercises no discretion, we give little deference. In State v. Rose, 1998 MT 342, ¶ 18, 292 Mont. 350, ¶ 18, 972 P.2d 321, ¶ 18, we could discern no tactical advantage to the attorney’s actions when the attorney failed to request a jury instruction to view an accomplice’s testimony with distrust, and we concluded the first part of the Strickland test was met. Similarly, it was outside the range of competence required of attorneys in criminal cases when the attorney, for no strategic reason, neglected to request a “failure to agree” jury instruction which would have allowed the jury to consider a lesser included offense before first acquitting the defendant of the greater charge. State v. Rogers, 2001 MT 165, ¶ 13, 306 Mont. 130, ¶ 13, 32 P.3d 724, ¶ 13. In State v. Jefferson, 2003 MT 90, ¶ 50, 315 Mont. 146, ¶ 50, 69 P.3d 641, ¶ 50, no plausible justification existed for an attorney admitting to the defendant’s guilt on a lesser included offense during the opening statement, because the admission undermined the defendant’s purpose in previously withdrawing his guilty plea and going to trial.
¶6 In the present case, Henderson’s counsel was appointed to represent Henderson in March of 1996. Counsel only met with Henderson twice. At the first meeting in March, Henderson explained that he was innocent and that the contraband was not his. At the postconviction hearing, Henderson’s counsel testified that he performed no investigation, research or analysis, nor did he file any pretrial motions. Counsel’s file on Henderson reveals that he performed a total of four hours of work on Henderson’s case. The four hours included clerical work such as preparing transport orders, appearing on behalf of Henderson, and then appearing with Henderson at the final change of plea hearing. One quarter of Henderson’s counsel’s time on the case, about one hour, was spent persuading Henderson to plead guilty. Henderson’s counsel would only have spent one-half hour in this endeavor, but he had to repeat the process when Henderson’s initial change of plea was not accepted. The *73 sum total of counsel’s legal work on Henderson’s behalf is that he asked the county attorney to propose a plea bargain and then signed the prosecution’s first offer on June 8. Under the plea bargain, the recommended sentence was for five years to the Department of Corrections. Henderson’s counsel then sent Henderson a copy of the plea bargain on June 28, with a letter which stated: “Please let me know if you are going to accept the plea bargain. If you do not, you will go to trial on September 9, 1996.” At the status conference on August 26, without having heard from Henderson, his counsel advised the court that Henderson wished to change his plea to guilty. At the change of plea hearing, Henderson pled guilty, but denied the elements of the crime asserting lack of knowledge that the pills were there and that the pills were really owned by the car’s driver. In response, the county attorney indicated the plea was unacceptable, and that if Henderson did not wish to make an acceptable guilty plea, the prosecution could be ready to go to trial in forty-eight hours. The county attorney also indicated he would be inclined to seek increased punishment of Henderson as a persistent felony offender. After a recess during which Henderson’s counsel explained an Alford plea, Henderson pled guilty to the charge.
¶7 The overai’ching duty of a criminal defense counsel is to advocate on behalf of the defendant, to meet, test and refute the case of the prosecution. Henderson’s counsel, however, disregarded the statements and wishes of his client, while accepting as true all of the statements of law enforcement. Indeed, he did nothing more than request a plea agreement and facilitate the conviction of his client without a trial. In claims of ineffective assistance of counsel, we apply the highly deferential standard of Strickland to all strategic decisions, recognizing the inherent artistry in the practice of law, because no two attorneys would defend a particular client in the same way. Strickland, 466 U.S. at 689, 104 S.Ct. at 2065, 80 L.Ed.2d at 695. However, we are not presented with counsel’s strategic decisions, but rather, the complete failure of counsel to honor his duty to investigate the case. State v. Denny (1993), 262 Mont. 248, 252-53, 865 P.2d 226, 228-29. Moreover, Henderson’s counsel utterly failed to advocate for his client in any meaningful way. For example, when it appeared that Henderson would not enter an acceptable guilty plea and would force a trial, the prosecutor threatened Henderson with persistent felony offender status, even though the prosecution would have been procedurally barred from filing such a notice at that late date. Further, the prosecution indicated it could be ready to go to trial in two day’s time. Yet, Henderson’s counsel failed to challenge the State’s threat to *74 seek persistent felony offender status or to disabuse Henderson of any concerns engendered by this threat.
¶8 The assistance of counsel as contemplated by the United States and Montana Constitutions contemplates that counsel do more than merely accompany the accused in court. Counsel must give assistance in the role of advocate, a role which is critical to just results in our adversarial system of justice. Strickland, 466 U.S. at 685, 104 S.Ct. at 2063, 80 L.Ed.2d at 692. In reviewing acts of attorney neglect or ignorance, we accord no deference. Hans v. State (1997), 283 Mont. 379, 382, 942 P.2d 674, 682. The errors and omissions of Henderson’s counsel were sufficiently serious that he was not functioning as the “counsel” guaranteed by the Sixth Amendment of the United States Constitution and Article II, Section 24, of the Montana Constitution. Henderson has therefore established the first part of Strickland, the deficient performance of counsel.
¶9 The second part of the Strickland test requires the petitioner to show that counsel’s deficient performance prejudiced the defense, that the errors were so serious as to deprive the defendant of a fair trial. In the context of a guilty plea, a petitioner establishes prejudice by showing that there is a reasonable probability that, but for counsel’s errors, he would not have pleaded guilty and would have insisted on going to trial. Hill v. Lockhart (1985), 474 U.S. 52, 59, 106 S.Ct. 366, 370, 88 L.Ed.2d 203, 210. “Prejudice” is a reasonable probability that the defendant would have insisted on going to trial had he not received ineffective assistance, and a “reasonable probability” is a probability sufficient to undermine confidence in the outcome. Ostrander v. Green (4th Cir. 1995), 46 F.3d 347, 355, citing Strickland, 466 U.S. at 694, 104 S.Ct. at 2068, 80 L.Ed.2d at 698. The prejudice analysis takes into account the potential strength of the state’s case, as well as the likelihood of success of the actions counsel failed to take. Hill, 474 U.S. at 59-60, 106 S.Ct. at 371, 88 L.Ed.2d at 210-11.
¶10 Other states apply an objective standard to measure the establishment of prejudice as contemplated by Hill. In State v. Ysea (Ariz. 1998), 956 P.2d 499, the defendant’s counsel was operating under the erroneous belief that the defendant risked the death penalty if he went to trial, even though, as a matter of law, the death penalty was not a possibility. Counsel convinced his client to plead guilty pursuant to a plea bargain in order to avoid the death penalty. The Arizona Supreme Court applied the objective reasonable defendant standard to conclude that fear of the death penalty would have been a primary concern in motivating the defendant to plead guilty. This was sufficient to undermine the court’s confidence in the plea, even *75 though the defendant could not demonstrate a likelihood of success on the merits. Notably, the court recognized that the right to go to trial is the right of a defendant to take his chances on being found guilty, not guilty, or guilty of a lesser included offense. Ysea, 956 P.2d at 505. The Supreme Court of Georgia similarly allowed the withdrawal of a guilty plea based on ineffective assistance of counsel upon a showing of erroneous legal advice as to the collateral consequences of a guilty plea. Rollins v. State (Ga. 2004), 591 S.E.2d 796. The Georgia court rejected the argument that the entry of the guilty plea foreclosed the defendant’s ability to show she was harmed by erroneous advice, because the entry of the guilty plea was itself the resulting prejudice. Rollins, 591 S.E.2d at 800.
¶11 The Supreme Court of Appeals of West Virginia ordered the setting aside of a guilty plea where defense counsel had not performed an adequate or reasonable investigation. State ex rel. Strogen v. Trent (W.Va. 1996), 469 S.E.2d 7. The Court focused on counsel’s failure to make a motion to suppress the defendant’s statement as sufficient in and of itself to show that counsel lacked command of all the facts and circumstances surrounding the petitioner’s statement. The record indicated that counsel’s decision not to file a suppression motion was based solely on his review of the prosecution’s file. Even though Strogen had admitted his guilt and had pled guilty, the Court concluded Strogen had been prejudiced and ordered the setting aside of his guilty plea and conviction.
¶12 In determining whether a reasonable defendant would have pleaded guilty or if he would have insisted on going to trial, we must look at the surrounding facts and circumstances. Here, according to the police reports, the officer first viewed the pills on the car seat after he asked Henderson to step out of the car. The alleged contraband was only visually identified by a pharmacist. The arresting officers did not know that Henderson was on parole until after he had been arrested. Lastly, the pills from his pocket were never actually identified.
¶13 Based on these facts, Henderson claims there were obvious issues as to the legality of the arrest and asserts that the State would not have been able to identify the contraband or prove the elements of constructive possession. Henderson also presented expert testimony that a mere thirty minutes of research in a standard treatise on fourth amendment criminal defense revealed a colorable defense based on the proposition that not everyone at the scene of a crime is necessarily a party to the crime. However, we need not address the actual merits of whether a motion based on the defense’s theory would ultimately be successful; rather, the issue is presented to illustrate there was at least *76 one colorable argument in favor of Henderson’s position.
¶14 Furthermore, at his initial attempt to plead guilty, Henderson essentially asserted his actual innocence by denying the elements of the crime. Only when faced with the threat of a trial in a very short time with a possible persistent felony offender sentence of up to 100 years and knowing that his counsel had done nothing to assist him and was unprepared for such a trial did Henderson ultimately enter an Alford plea, whereby he continued to assert his actual innocence but admitted he would likely be found guilty.
¶15 In addressing the prejudice prong of the Strickland-Hill test, we pose the following inquiry: do we remain confident that a reasonable defendant in Henderson’s shoes, with the benefit of counsel’s diligent investigation of facts and applicable law and appropriate pre-trial motions, would have pleaded guilty anyway had he known that trial was not likely to occur in two hours’ time or in two days’ time, and that persistent felony offender status with its possible 100-year sentence was not a possibility without a showing of good cause by the prosecution?
¶16 The simple answer is that we lack that confidence. Reasonable people will naturally seek freedom from restraint. Although Henderson agreed to a plea bargain with the maximum sentence of five years, he did so to avoid a potentially far more lengthy persistent felony offender sentence. Counsel’s failures to subject any portion of the prosecution’s case to the crucible of meaningful adversarial testing or to advocate for his client in any meaningful way casts the fairness of the proceeding into doubt. Henderson’s decision to enter an Alford plea was clearly influenced by the lack of effective assistance of counsel. But for the ineffective assistance of his counsel, Henderson would not have entered a guilty plea. This satisfies the prejudice prong of Strickland-Hill.
¶17 Pursuant to § 46-16-105(2), MCA, a defendant is authorized to withdraw a guilty plea for good cause shown. The “good cause” requirement is satisfied if a petitioner can show both prongs of Strickland, the ineffective assistance of counsel and the resulting prejudice to the petitioner. State v. Lawrence, 2001 MT 299, ¶ 12, 307 Mont. 487, ¶ 12, 38 P.3d 809, ¶ 12. Having established both prongs, Henderson must be allowed to withdraw his guilty plea and proceed to trial. We reverse the District Court’s denial of postconviction relief and remand for proceedings consistent with this opinion.
JUSTICES COTTER, REGNIER and RICE concur.