No. 04-110

IN THE SUPREME COURT OF THE STATE OF MONTANA

2005 MT 118

STATE OF MONTANA,

Plaintiff and Respondent,

v.

ROBERT LOUIS LAMERE, JR.,

Defendant and Appellant.

APPEAL FROM: District Court of the Eighth Judicial District,
In and for the County of Cascade, Cause No. ADC 2002-203
The Honorable Thomas M. McKittrick, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Kristina Guest, Assistant Appellate Defender, Helena, Montana

For Respondent:

Honorable Mike McGrath, Montana Attorney General, Tammy K Plubell,
Assistant Attorney General, Helena, Montana; Brant S. Light, Cascade
County Attorney, Marvin Anderson, Deputy County Attorney, Great Falls,
Montana

Submitted on Briefs: March 17, 2005

Decided: May 10, 2005

Filed:

_____
Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1 Following a jury trial in the District Court of the Eighth Judicial District, Cascade County, Robert Louis Lamere, Jr. (Lamere) was convicted of aggravated assault and assault with a weapon. Lamere appeals. We reverse the conviction and remand this case to the District Court for a new trial. The sole issue on appeal is whether Lamere received effective assistance of counsel during voir dire of prospective jurors.

**FACTUAL AND PROCEDURAL BACKGROUND**

¶2 On May 23, 2002, the State filed an information charging Lamere with one count of aggravated assault and one count of assault with a weapon. These charges arose out of an altercation which occurred on May 5, 2002, at the Club Cigar in Great Falls, Montana. A one day trial was conducted in the District Court on August 11, 2003, and the jury found Lamere guilty on both counts. On January 12, 2004, the District Court rendered its sentence, after which Lamere appealed to this Court.

¶3 Lamere's claim of ineffective assistance arises out of his attorney's handling of the voir dire process. One of the individuals who served as a juror in Lamere's trial, Janet Whirry (Whirry), is the mother of Sarah Hollis (Hollis), a paralegal employed at the Cascade County Attorney's Office. Hollis sat at counsel table during voir dire, assisting the prosecuting attorney. Prior to the trial, Whirry had completed a juror questionnaire form which contained the question "Are you or any member of your immediate family involved in law enforcement in any official capacity?" Whirry answered "Yes" and explained "Daughter Sarah Hollis is a paralegal at County Attorney's Office - Great Falls Police

2

Department retired." Lamere's court appointed counsel did not take notice of these answers. Thus, defense counsel did not question Whirry regarding any potential bias or prejudice that may have resulted from her relationship with Hollis or her connection to the Great Falls Police Department.

¶4 At the outset of defense counsel's voir dire, he likened the trial to a race between the State and Lamere, with the verdict representing the finish line. Pursuant to this analogy, counsel then asked prospective jurors who was ahead in the race. This inquiry was coupled with questions regarding the presumption of innocence in a criminal trial. Defense counsel's only questions to Whirry during voir dire focused on her understanding of this concept. In response, Whirry said that Lamere was ahead in the race because he was innocent until proven guilty. Whirry also said that the State could only pass Lamere in the race by presenting evidence convincing the jury of his guilt.

¶5 The only other questions posed to Whirry came from the State's attorney, who asked Whirry about her previous service as a juror. In response to these questions Whirry stated that she had served in a "murder" case where the jury reached a guilty verdict. Thus, Whirry did not disclose her relationship with Hollis or her connection to the Great Falls Police Department at any point in the voir dire proceedings. Ultimately, Whirry served on Lamere's jury, as neither the State nor Lamere's counsel raised a challenge for cause or exercised a peremptory challenge to remove her.

¶6 During the lunch recess, defense counsel was informed of Whirry's relation to Hollis, after which he moved to replace Whirry with the alternate juror. In doing so, defense

3

counsel acknowledged his failure to take notice of the information in Whirry's juror questionnaire, stating:

> [I]t's my responsibility for not picking that up. I have no reason from the questioning, obviously, to believe that Ms. Whirry can't be straightforward and balanced, however, I think the conflict is, in my view, extremely serious and extremely obvious. I take full responsibility for it, and the defendant certainly now is on notice that his attorney made a mistake . . . .

The State opposed the motion, arguing that Whirry had indicated she would be fair to both sides. The District Court denied the motion, observing that the State had not committed any wrongdoing, and stating that Whirry had given no indication of being biased or prejudiced.

**DISCUSSION**

¶7      The right to effective assistance of counsel is guaranteed by the Sixth Amendment to the United States Constitution, and by Article II, Section 24 of the Montana Constitution. *State v. Kougl*, 2004 MT 243, ¶ 11, 323 Mont. 6, ¶ 11, 97 P.3d 1095, ¶ 11. As we have previously stated, "[t]he effective assistance of counsel is critical to our adversarial system of justice; a lack of effective counsel may impinge the fundamental fairness of the proceeding being challenged." *State v. Henderson*, 2004 MT 173, ¶ 4, 322 Mont. 69, ¶ 4, 93 P.3d 1231, ¶ 4. Hence, a convicted defendant is entitled to a new trial upon establishing that defense counsel rendered ineffective assistance. *See State v. Jefferson*, 2003 MT 90, ¶ 57, 315 Mont. 146, ¶ 57, 69 P.3d 641, ¶ 57.

¶8      We review claims of ineffective assistance of counsel under the two-prong test enunciated in *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. *Henderson*, ¶ 4. Under the *Strickland* test, a convicted defendant bears the burden of

4

demonstrating both that defense counsel's performance was deficient, and that this deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064. This test is consistent with § 46-20-701(1), MCA, which provides that "[a] cause may not be reversed by reason of any error committed by the trial court against the convicted person unless the record shows that the error was prejudicial."

¶9 Claims of ineffective assistance of counsel constitute mixed questions of law and fact which we review *de novo*. *Kougl*, ¶ 12. In analyzing such claims, we must first consider whether the trial record is sufficient to determine whether counsel was ineffective. *State v. Daniels,* 2003 MT 247, ¶ 41, 317 Mont. 331, ¶ 41, 77 P.3d 224, ¶ 41. A trial record is sufficient for our review on direct appeal when it contains two essential components. First, the record must adequately document the challenged act or omission of defense counsel. *State v. Harris*, 2001 MT 231, ¶ 21, 306 Mont. 525, ¶ 21, 36 P.3d 372, ¶ 21. Second, the record must afford sufficient understanding of the reasons for counsel's act or omission, in order to answer the question of whether the alleged error expresses a trial strategy or tactical decision. *Harris*, ¶ 21. If the record does not supply the reason for counsel's act or omission, the claim must be raised in a petition for post-conviction relief, where a record can be developed to establish why the challenged act or omission occurred. *Harris*, ¶ 21. For example, in *State v. Herrman*, 2003 MT 149, 316 Mont. 198, 70 P.3d 738, we did not address a claim of ineffective assistance of counsel because the trial record did not disclose the reason for counsel's challenged omissions. *Herrman*, ¶ 34. As does Lamere in the instant appeal, the defendant in *Herrman* alleged that his counsel rendered ineffective

assistance during *voir dire* by failing to develop information in the record demonstrating an individual juror's bias and by failing to exercise challenges for cause against those jurors expressing bias. *Herrman*, ¶ 20. In refusing to address that claim, we stated that such contentions would be more appropriately raised in a petition for post-conviction relief, *Herrman*, ¶ 34, noting that it would be improper for us to assume any reasons for counsel's actions or inactions, *Herrman*, ¶ 30.

¶10    In the case *sub judice*, the trial transcript contains a record of defense counsel's performance during voir dire which adequately documents the challenged omissions: (1) the failure to question Whirry regarding any potential bias or prejudice that may have resulted from her relationship with Hollis or her connection to the Great Falls Police Department; and (2) the failure to raise a challenge for cause or exercise a peremptory challenge to remove Whirry from the jury. Further, defense counsel's statements to the District Court, as recorded in the transcript, provide a clear explanation as to why these failures occurred. As such, the trial record is sufficient for our review of this claim. We now turn to our *de novo* review of Lamere's claim, applying the *Strickland* test.

**Deficient Performance**

¶11     Pursuant to the first prong of the *Strickland* test, a defendant must establish that counsel's performance was so deficient that counsel was not functioning as the "counsel" guaranteed under both the United States Constitution and the Montana Constitution. *Henderson*,¶ 5. This requires a defendant to show that counsel's representation fell below an objective standard of reasonableness. *State v. Lucero*, 2004 MT 248, ¶ 15, 323 Mont. 42, ¶ 15, 97 P.3d 1106, ¶ 15.

¶12     There are countless ways to provide effective assistance in any given case, *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065, and we indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance, *Henderson*, ¶ 5. A convicted defendant claiming ineffective assistance of counsel must overcome the presumption that, under the circumstances, the challenged action could be considered sound trial strategy. *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065. The deference we accord an attorney's conduct on review is such that we rarely grant relief if there is some evidence that the decision was strategic. *Henderson*, ¶ 5. However, "[i]n reviewing acts of attorney neglect or ignorance, we accord no deference." *Henderson*, ¶ 8.

¶13     Lamere argues that his trial counsel rendered deficient performance during voir dire by failing to adequately question Whirry or raise a challenge to exclude her from the jury. Given Whirry's disclosures in her juror questionnaire form, Lamere argues, defense counsel had a duty to seek information regarding any bias or prejudice Whirry may have harbored, in order to ensure an impartial jury. Lamere concludes that his counsel's failure to pursue

7

this information prohibited him from making informed decisions regarding a challenge for cause or a peremptory challenge.

¶14    The State contends Lamere has not demonstrated that his counsel's performance was deficient because the claim is based on speculation.  Specifically, the State asserts that Lamere's claim is based on the speculation that if defense counsel had taken complete notice of Whirry's juror questionnaire and questioned her accordingly, then he would have developed grounds to challenge Whirry for cause, and counsel would have in fact challenged Whirry for cause, and there would have been sufficient information in the record for the District Court to grant the challenge.  Upon this characterization of Lamere's claim, the State argues that all such speculation is unwarranted.  Further, the State argues that if defense counsel had challenged Whirry for cause based solely upon the existence of her relation to Hollis, the challenge would have been insufficient and properly denied.  Finally, the State argues that nothing in the record demonstrates bias on the part of Whirry, nor does the record contain any other information to support a challenge to remove her for cause.

¶15    The right to effective assistance of counsel "exists, and is needed, in order to protect the fundamental right to a fair trial." *Strickland*, 466 U.S. at 684, 104 S.Ct. at 2063.  A fair trial is one in which evidence subject to adversarial testing is presented to an impartial tribunal.  *Strickland*, 466 U.S. at 685, 104 S.Ct. at 2063.  Defense counsel has the duty to ensure a defendant's right to a fair trial by a panel of impartial jurors.  *State v. Chastain* (1997), 285 Mont. 61, 65, 947 P.2d 57, 60 (overruled in part on other grounds by *Herrman*, ¶ 33).  As the right to trial by an impartial jury is principally secured through the system of

8

challenges exercised during voir dire, it is incumbent on defense counsel to develop information in the record that demonstrates a juror's bias as to a party or an issue in the case. *Chastain,* 285 Mont. at 65, 947 P.2d at 60. The purpose of voir dire in a criminal proceeding is to determine the existence of a prospective juror's partiality. *Herrman*, ¶ 23. Adequate questioning in voir dire enables counsel to properly raise a challenge for cause pursuant to § 46-16-115(2)(j), MCA, which provides for such challenges where a prospective juror has "a state of mind in reference to the case or to either of the parties that would prevent the juror from acting with entire impartiality and without prejudice to the substantial rights of either party." Adequate questioning in voir dire also enables counsel to intelligently exercise peremptory challenges, *Herrman*, ¶ 23, which are essentially a matter of trial strategy, *Herrman*, ¶ 31.

¶16     Here, Whirry's juror questionnaire disclosed that she or a member of her immediate family was retired from the Great Falls Police Department, and that her daughter was employed as a paralegal at the County Attorney's Office. This relationship obviously raised legitimate questions as to Whirry's ability to serve as an impartial juror. As such, counsel was obligated to do more than merely question Whirry regarding her understanding of the presumption of innocence. At a minimum, counsel should have pursued information regarding these answers to determine the presence or absence of bias. Such investigation was necessary to ensure that Lamere's jury was impartial. Had counsel properly questioned Whirry, he may have developed information justifying a challenge for cause. Alternatively, proper questioning may have prompted counsel to remove Whirry from the panel by the use

9

of a peremptory challenge. In any event, proper questioning would have allowed counsel to make informed decisions regarding the use of challenges in determining the makeup of the jury.

¶17 Specifically, counsel should have questioned whether Whirry could remain impartial given her relationship with Hollis. While it is certainly possible that this relationship would not have affected Whirry's ability to remain impartial, we have recognized as a "fundamental fact of human character" that people are "prone to favor that side of a cause with which they identify themselves either economically, socially, or emotionally." *Chastain*, 285 Mont. at 64, 947 P.2d at 59-60. Additionally, counsel should have inquired regarding the specifics of Whirry's familial connection to the Great Falls Police Department, and questioned whether that would affect her ability to remain impartial. As we have previously stated, the mere fact that a prospective juror is connected with law enforcement does not, without more, necessitate a finding that he or she would not be an impartial juror. *State v. Deschon*, 2004 MT 32, ¶ 41, 320 Mont. 1, ¶ 41, 85 P.3d 756, ¶ 41. However, we recognize the importance of questioning potential jurors who have a background in law enforcement. In *State v. Radi* (1978), 176 Mont. 451, 578 P.2d 1169, this Court stated:

> [W]e are mindful of the natural inclinations of one whose life is committed to law enforcement. For this reason the widest possible examination should be allowed such person in his examination as a potential juror, and should there be any doubt in the event of a challenge for cause, the trial court should resolve the doubt in favor of allowing the challenge.

*Radi*, 176 Mont. at 460, 578 P.2d at 1175.

10

¶18 Defense counsel's failure to properly question Whirry was not a tactical decision. Rather, it was the consequence of a simple oversight, as demonstrated by counsel's admission to the District Court. As a result of this oversight, counsel passed the jury for cause and exercised his peremptory challenges without considering or investigating readily available and highly relevant information regarding Whirry's ability to serve as an impartial juror. Thus, the very purpose of the voir dire proceeding was defeated, because counsel's oversight precluded him from making properly informed choices in challenging prospective jurors.

¶19 The State asserts that Lamere's claim is based on speculation that Whirry would have been removed from the jury based on proper questioning by defense counsel. However, Lamere's claim is not based on any such speculation. Rather, it is based simply on counsel's failure to ensure that the jury was impartial by developing information during voir dire based on pertinent disclosures in Whirry's juror questionnaire. In resolving this claim, we need not assume that proper questioning by counsel would have resulted in Whirry's removal from the jury. Instead, we must determine whether counsel conducted proper questioning in light of the available information. Thus, the State has mischaracterized Lamere's claim. Because the State's arguments are based upon this mischaracterization, they simply do not address the issue in this case--whether defense counsel rendered deficient performance by failing to question Whirry regarding the pertinent information in her juror questionnaire.

¶20 Additionally, the State suggests that we can resolve Lamere's claim based on the information in the record regarding Whirry's impartiality, arguing that there is no evidence

of bias on her part. This argument fails, as it is precisely the lack of information in the record regarding bias which precludes an informed decision as to whether Whirry should have been challenged for cause. Consequently, this lack of information regarding bias also establishes that counsel's performance was deficient.

¶21 In summary, defense counsel had a duty to ensure that Lamere received a fair trial by a panel of impartial jurors. Pursuant to this duty, counsel was obligated to read the juror questionnaire forms and take notice of Whirry's answers which merited further inquiry. Further, counsel was obligated to develop information in the record regarding the presence or absence of any pertinent bias Whirry may have harbored, and raise challenges accordingly. Counsel's inexcusable failure to take notice of the pertinent information in Whirry's questionnaire resulted in inadequate questioning during voir dire, which in turn led counsel to make uninformed decisions regarding challenges. Thus, counsel failed to fulfill his duty to ensure that the jury was impartial. We hold that counsel's performance was deficient because it fell below the level reasonably required of counsel in these circumstances. As such, Lamere has satisfied the first prong of the *Strickland* test.

**Prejudice**

¶22 Under the second prong of the *Strickland* test, a defendant must show that he was prejudiced by counsel's deficient performance. *Henderson*, ¶ 9. In order to establish prejudice, a defendant must show that counsel's errors were so serious as to deprive the defendant of a fair trial; a trial producing a reliable result. *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064. As *Strickland* noted:

> An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment. [Citation omitted.] The purpose of the Sixth Amendment guarantee of counsel is to ensure that a defendant has the assistance necessary to justify reliance on the outcome of the proceeding. Accordingly, any deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution.

*Strickland*, 466 U.S. at 691-92, 104 S.Ct. at 2066-67.

¶23 Lamere argues that his counsel failed to ensure that the jury was impartial because Whirry was potentially biased, she was not adequately questioned, and she ultimately served on the jury. Lamere asserts that this error in the jury selection process amounts to a structural error, and thus, prejudice must be presumed. In response, the State argues that even if counsel's performance was deficient, Lamere has failed to prove that prejudice resulted because there is no evidence of bias in the record. Additionally, the State argues that a presumption of prejudice is not supported by any evidence in the record. Further, the State argues that this Court should not presume prejudice because such a presumption would be based on speculation as to the information Whirry would have disclosed upon further questioning, and speculation as to how counsel would have reacted to that information.

13

Finally, the State argues that this Court should not presume prejudice because the evidence against Lamere was overwhelming.

¶24 The purpose of voir dire in a criminal proceeding is to determine the existence of prospective jurors' partiality, so that counsel may intelligently raise challenges for cause and peremptory challenges. *Herrman*, ¶ 23. The use of challenges in voir dire is the principal method of securing a defendant's fundamental right to trial by an impartial jury. *Chastain,* 285 Mont. at 65, 947 P.2d at 60. "It is incontrovertible that jury impartiality goes to the very integrity of our justice system, and that the right to an impartial jury is so essential to our conception of a fair trial that its violation cannot be considered harmless error." *Herrman*, ¶ 22. Thus, errors in the voir dire process implicate a defendant's constitutional right to be tried by an impartial jury, thereby calling in to question the fundamental fairness of the entire proceeding. As we have stated, jury selection is critically important in assuring a defendant's fundamental right to an impartial jury and a fair trial. *State v. Good*, 2002 MT 59, ¶ 60, 309 Mont. 113, ¶ 60, 43 P.3d 948, ¶ 60. Errors involving jury selection indelibly affect the fairness of the trial, since such errors precede the trial. *Good*, ¶ 60. Thus, we have held that errors in the jury selection process are structural errors. *State v. LaMere*, 2000 MT 45, ¶ 26, 298 Mont. 358, ¶ 26, 2 P.3d 204, ¶ 26.

¶25 Structural errors are defects in the framework within which a trial proceeds and, as such, undermine the fairness of the entire trial proceeding. *State v. Van Kirk*, 2001 MT 184, ¶ 38, 306 Mont. 215, ¶ 38, 32 P.3d 735, ¶ 38. Such defects, which precede the presentation of evidence, cannot be qualitatively or quantitatively weighed against the admissible

14

evidence introduced at trial, and thus are presumptively prejudicial. *Van Kirk*, ¶ 38. When structural error is present, the "criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence . . . ." *Arizona v. Fulminante* (1991), 499 U.S. 279, 310, 111 S.Ct. 1246, 1265, 113 L.Ed.2d 302. This Court has identified structural error in the context of jury selection on several occasions. For example, structural error exists upon a material failure to substantially comply with statutes governing the procurement of a trial jury, *LaMere*,¶ 50, where a defendant is excluded from in-chambers individual voir dire proceedings, *State v. Bird*, 2002 MT 2, ¶ 40, 308 Mont. 75, ¶ 40, 43 P.3d, 266, ¶ 40, and where a district court abuses its discretion by denying a challenge for cause to a prospective juror, after which the defendant uses a peremptory challenge to remove the disputed juror and exhausts all other peremptory challenges, *Good*, ¶ 62.

¶26 Trial error, on the other hand, is that type of error which typically occurs during the presentation of a case to the jury. *Good*, ¶ 61. Such error is amenable to qualitative and quantitative assessment by a reviewing court for prejudicial impact relative to the other evidence introduced at trial. *Good*, ¶ 62. As such, trial error is not presumptively prejudicial. *Good*, ¶ 61.

¶27 The United States Supreme Court has stated that in certain Sixth Amendment contexts, prejudice is presumed. *Strickland*, 466 U.S. at 692, 104 S.Ct. at 2067. Actual or constructive denial of the assistance of counsel is presumed to result in prejudice, as are various kinds of state interference with counsel's assistance. *Strickland*, 466 U.S. at 692, 104 S.Ct. at 2067.

15

¶28 In the case *sub judice*, prejudice is adequately established because a structural error existed, and such errors are presumptively prejudicial. *Good*, ¶ 59. As explained above, defense counsel's performance was deficient because he failed to take the steps necessary to secure an impartial jury. Counsel's failure in this regard constitutes an error in the jury selection process which undermined the integrity of the entire trial. As we said in *LaMere*, "errors in the jury selection process are 'structural' in nature and, therefore, affect the very framework within which a trial proceeds. That is, they are errors which indelibly affect the essential fairness of the trial itself." *LaMere*, ¶ 26. Thus, we hold that counsel's deficient performance constituted a structural error, and prejudice is therefore presumed. As such, Lamere has satisfied the second prong of the *Strickland* test.

¶29 The State argues that even if counsel's performance was deficient, a presumption of prejudice is not supported by any evidence in the record and would be based on speculation. However, having determined that a structural error existed at the outset of Lamere's trial, we need not engage in speculation or refer to the evidence of record in order to support a determination of prejudice. Rather, prejudice is presumed. Indeed, to adopt the State's argument would be to accept the speculation that counsel's deficient performance did not affect the impartiality of the jury. We are simply unable to make such an assessment because of the uncertainties rendered by structural error, which is precisely why prejudice is presumed in these circumstances. The State also argues that this Court should not presume prejudice because the evidence against Lamere was overwhelming. Again, because we have determined that a structural error existed at the outset of Lamere's trial, we must presume

16

prejudice regardless of the evidence against Lamere. The strength and magnitude of the evidence against Lamere has no bearing on the determination of whether structural error existed, nor does it invalidate the presumption of prejudice that accompanies structural error.

¶30 In summary, Lamere has satisfied both prongs of the *Strickland* test. Counsel's failure to ensure that the jury was impartial constitutes deficient performance. This failure produced a structural error, and thus prejudice is presumed. As such, we hold that Lamere did not receive effective assistance of counsel during voir dire.

¶31 Reversed and remanded.

/S/ JAMES C. NELSON

We Concur:

/S/ KARLA M. GRAY
/S/ PATRICIA O. COTTER
/S/ JIM RICE
/S/ BRIAN MORRIS