JUSTICE NELSON
dissents.
¶21 I would reverse and remand for appointment of new counsel and a new trial on Issue 2.1 would, therefore, not reach Issue 1.
¶22 The Court’s Opinion fails to apply the proper analysis in Issue 2. There is an inherent or per se conflict of interest when an attorney defends a criminally accused person in one jurisdiction while, simultaneously, acting as prosecutor in an overlapping jurisdiction. The error implicit in such an arrangement constitutes structural error and is, therefore, presumptively prejudicial.
¶23 During the time that Spencer was representing Hendricks as a county public defender, he was also working as the Libby City Attorney. Libby is the county seat of Lincoln County, thus, both the Libby Police Department and the Lincoln County Sheriffs Office are located in that city. Spencer admitted that the Libby Police Department officers and Lincoln County Sheriffs deputies assist each other on cases. Spencer also admitted that, in his position as a city prosecutor, he would sometimes call sheriff’s deputies as witnesses in *54 his city prosecutions. Spencer never discussed this conflict of interest with Hendricks, nor did he obtain a waiver of the conflict from his client.
¶24 While this Court has not previously addressed this issue, the American Bar Association, the Montana State Bar Ethics Committee, and sister jurisdictions have.
¶25 The American Bar Association’s Standards for Criminal Justice provide that “[djefense counsel should not represent a criminal defendant in a jurisdiction in which he or she is also a prosecutor.” ABA Standards for Criminal Justice Prosecution Function and Defense Function 4-3.5(g) (3d ed. 1993) (hereinafter ABA Standards). The Commentary to this Standard, in pertinent part, explains:
There are, indeed, advantages to the operation of an adversary system in which lawyers can avoid being stereotyped in their roles. In our system of institutionalized prosecution offices, it is difficult, if not impossible, however, for prosecutors to simultaneously appear in a defense role. But it is feasible to have experienced defense counsel appointed as special prosecutors from time to time. The long-range benefits of such interchange, however, are such that lawyers who have been trained in prosecution offices should be encouraged to devote some period of their professional careers in defense work, whether privately or as public defenders, after they have left prosecution offices. Correspondingly, public defender staff members should be encouraged to move into prosecution offices. [Emphasis added.]
¶26 Ethics Opinion 010417 of the State Bar of Montana’s Ethics Committee follows this Standard. The question addressed was: “May the county public defender continue to defend within the county while also criminally prosecuting on behalf of the city?” The Ethics Committee held that
[a]n attorney may not simultaneously occupy the positions of a city attorney with prosecutorial functions and county public defender when the jurisdictions overlap. The proposed representation creates a conflict of interest of the type identified by Rule 1.7 of the Montana Rules of Professional Conduct.
¶27 Rule 1.7 of the Montana Rules of Professional Conduct prohibits conflicts of interest. Specifically, this Rule mandates that a lawyer shall not represent a client if the representation of that client will be *55 directly adverse to another client.[1] The Ethics Committee stated that “[a] criminal defendant’s interests are, almost by definition, adverse to the interests of the political subdivision’s (i.e., cities, towns and counties) law enforcement authority.” The Ethics Committee went on to quote from Ethics Opinion 881130, noting that
for the city attorney charged with public duties including the prosecution of crimes to accept employment in defense of one charged with crimes, would appear to place him in [a] position adverse to his public employer likely to destroy public confidence in him as a public officer and thus bring reproach to his profession, as well as to himself. This apparent conflict of interest should be avoided.
¶28 Clearly, our State Bar Ethics Committee was correct in its determination that a public prosecutor for a city cannot simultaneously serve as a county public defender in overlapping jurisdictions. “The basic duty defense counsel owes to the administration of justice and as an officer of the court is to serve as the accused’s counselor and advocate with coinage and devotion and to render effective, quality representation.” ABA Standards 4-1.2(b). That we now approve of this obvious breach of Rule 1.7 of the Montana Rules of Professional Conduct denigrates the professional responsibility of criminal defense attorneys and diminishes their duty of loyalty to the accused. The Court’s decision here does nothing to further higher ethical standards for criminal defense lawyers. Indeed, it accomplishes quite the opposite result.
¶29 Other jurisdictions that have considered this issue agree. The law is well summarized and collected in State v. Brown (Utah 1992), 853 P.2d 851. In that case, our sister jurisdiction, Utah, reversed the defendant’s conviction holding that as a matter of public policy and pursuant to the court’s inherent supervisory authority over other courts, as well as its express power to govern the practice of law, counsel with concurrent prosecutorial obligations may not be appointed to defend indigent persons. Brown, 853 P.2d at 857.
¶30 The Brown court’s rationale is instructive. The court first concluded that the vital interests of criminal justice are jeopardized when a city prosecutor is appointed to assist in the defense of a person accused of a crime. Next, noting that a criminal defendant is entitled *56 to undivided loyalty from his attorney,[2] the court astutely observed that this duty is compromised when an attorney with prosecutorial responsibilities represents an indigent defendan1>-a practice also known as dual representation. Specifically, the court noted that the divided loyalty inherent in this practice is evident in various facets of representation and public perception. Distilled from the Brown court’s discussion, these evils include:
• There will inevitably arise a struggle between, on the one hand, counsel’s obligation to represent his client to the best of his ability and, on the other hand, a public prosecutor’s natural inclination not to anger the very individuals whose assistance he relies upon in carrying out his prosecutorial responsibilities. The temptation might well arise not to be too hard on a police witness who is against your client today, but would be the star witness for your prosecution tomorrow.
• A municipality is an ancillary unit of state government and both city and state prosecutors deal interchangeably with law enforcement personnel from each jurisdiction. Whether state or municipal, prosecutors share the same loyalties.
• Counsel may hesitate to attack the constitutionality of laws he or she has sworn to uphold as a prosecutor. He may be loath to take a position as defense counsel which he would find embarrassing as a prosecutor.
• While counsel may intend to diligently represent his client’s interests, it is impossible to determine what sort of unconscious influences may affect such advocacy. When matters of judgment and trial tactics are made in the name of the accused, a defense counsel with conflicted loyalties may be unable to establish the propriety of his actions. Such conflicts, whether consciously perceived or not, jeopardize the integrity of the criminal adjudication process.
• The defendant’s interests may be further compromised because of his natural hesitancy in confiding fully in a prosecutor. For example, the defendant may have information regarding other crimes that he or she would not want the prosecutor to know. The *57 defendant may not feel that he or she is fully protected from potential abuse of confidences placed in defense counsel who also wears a prosecutor’s hat.
• Dual representation erodes public confidence in the criminal justice system which depends on diligently maintaining the appearance of fairness and impartiality in the adjudication process, in that:
• An unavoidable appearance of impropriety is created when a prosecutor assists in the defense of an accused, as the public may perceive that the prosecutor, desiring to further his or her own professional career, may use connections and influence to obtain a favorable result for the defendant.
• The public may also infer that the prosecutor will not jeopardize his or her “law and order” reputation by using vigorous defense tactics.
• The public may conclude that a prosecutor’s vigorous defense of an accused will result in decreased support from law enforcement in future cases. A prosecutor who alienates the law enforcement agencies upon which he or she depends, compromises his or her prosecutorial responsibilities.
• Regardless of counsel’s diligence, the inherent conflicts of the situation expose counsel to charges that the representation was not entirely faithful.
Brown, 853 P.2d at 857-59 (internal citations omitted). Accord State v. White (Tenn. 2003), 114 S.W.3d 469 (holding that counsel’s dual roles as prosecutor and defense counsel in the same county were inherently antagonistic and, thus, created an actual conflict of interest that required disqualification); State v. Ross (Mo. 1992), 829 S.W.2d 948 (holding that the appearance of impropriety arising from fact that two members of the law firm which represented defendant in a civil case brought by assault victim were working part time as county prosecutors, necessitated disqualification of the entire prosecuting attorney's office, even without a showing of actual prejudice).
¶31 Finally, the Brown court, in contradiction to our decision here, held that because it would be very difficult to assess prejudice in cases involving dual representation, it would be unnecessary and ill-advised to pursue a case-by-case inquiry to weigh actual prejudice. Rather, there should be a per se rule of reversal whenever such dual representation is undertaken so as to prevent its recurrence. Brown, 853 P.2d at 859.
¶32 Similarly, in the case sub judice, and for the reasons referred to *58 above, Spencer, who was involved in text-book dual representation, could not provide effective assistance of counsel to Hendricks. Aper se rule of reversal is required because this type of error is structural. Prejudice must, therefore, be presumed because of Spencer’s inherent conflict of interest and divided loyalty.
¶33 Structural error is a defect in the framework within which a trial proceeds and, as such, undermines the fairness of the entire trial proceeding. Structural error is presumptively prejudicial. State v. LaMere, 2005 MT 118, ¶ 25, 327 Mont. 115, ¶ 25, 112 P.3d 1005, ¶ 25 (citing State v. Van Kirk, 2001 MT 184, ¶ 38, 306 Mont. 215, ¶ 38, 32 P.3d 735, ¶ 38).
¶34 As the United State Supreme Court stated in Holloway v. Arkansas (1978), 435 U.S. 475, 489, 98 S.Ct. 1173, 1181, 55 L.Ed.2d 426, the Sixth Amendment guarantee of the assistance of counsel is among those “constitutional rights so basic to a fair trial that their infraction can never be treated as harmless error.” In Holloway, the Supreme Court, after finding that a conflict of interest existed between counsel and the defendant, held that reversal was required. “The right to have the assistance of counsel is too fundamental and absolute to allow courts to indulge in nice calculations as to the amount of prejudice arising from its denial.” Holloway, 435 U.S. at 488, 98 S.Ct. at 1181. If a defendant’s Sixth Amendment right to counsel is infringed, prejudice is presumed regardless of whether it was independently shown. Reversal is automatic. Holloway, 435 U.S. at 489, 98 S.Ct. at 1181 (citing Gideon v. Wainwright (1963), 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799; Hamilton v. Alabama (1961), 368 U.S. 52, 82 S.Ct. 157, 7 L.Ed.2d 114; White v. Maryland (1963), 373 U.S. 59, 83 S.Ct. 1050, 10 L.Ed.2d 193).
¶35 We have held that an accused’s right to counsel under Article II, Section 24 of the Montana Constitution is broader than that under the Sixth Amendment of the United States Constitution. State v. Garcia, 2003 MT 211, ¶ 37, 317 Mont. 73, ¶ 37, 75 P.3d 313, ¶ 37 (citing State v. Spang, 2002 MT 120, ¶ 22, 310 Mont. 52, ¶ 22, 48 P.3d 727, ¶ 22). Accord State v. Johnson (1986), 221 Mont. 503, 514-15,719 P.2d 1248, 1255; Ranta v. State, 1998 MT 95, 288 Mont. 391, 958 P.2d 670. Accordingly, under Montana’s Constitution, Hendricks was even more clearly entitled to counsel free from the conflicts of interest and divided loyalties inherent where his defense counsel was also a prosecutor. Prejudice must be presumed. A per se rule of reversal is required because of the structural error implicit in dual representation.
¶36 This Court is constitutionally tasked with supervising not only the *59 trial courts, but also the practice of law in this State. Art. VII, § 2, Mont. Const. Unfortunately, in declining to condemn the evils of dual representation and the violation of Rule 1.7 of the Montana Rules of Professional Conduct inherent in that practice, and in refusing to adopt a standard prohibiting this practice-a standard so fundamental that it is recognized by the American Bar Association, by the Ethics Committee of the State Bar of Montana, by the United States Supreme Court, and by numerous courts in sister jurisdictions-we have abrogated our supervisory responsibilities over both the trial courts and the Bar and, worse, our obligation to ensure that indigent criminal defendants receive effective assistance of counsel.
¶37 I strenuously urge our new Public Defender Commission and our new Chief Public Defender to rectify our default by adopting a statewide standard prohibiting criminal defense attorneys from simultaneously acting as prosecutors.
¶38 I would reverse Hendricks’ conviction; I would order that the tried court appoint conflict-free counsel to represent him; and I would remand for a new trial.
¶39 I dissent from our failure to do so.
JUSTICE WARNER joins in the dissent of JUSTICE NELSON.

 The version of Rule 1.7 interpreted by the Ethics Committee is somewhat different than the present version of the Rule. Notwithstanding, both versions prohibit lawyers from representing clients with directly adverse interests.

 Brown, 853 P.2d at 857 (citing Glasser v. United States (1942), 315 U.S. 60, 75-76, 62 S.Ct. 457, 467, 86 L.Ed. 680, reh’g denied sub nom, Kretske v. United States & Roth v. United States (1942), 315 U.S. 827, 62 S.Ct. 637, 86 L.Ed. 1222. The court also relied on Rule 1.7 of the Utah Rules of Professional Conduct (which is nearly identical to that interpreted in Ethics Opinion 010417 referred to above) noting that undivided loyalty was an “underlying premise” of the Rule.