No. 05-108

IN THE SUPREME COURT OF THE STATE OF MONTANA

2006 MT 22

JOHN TICE HENDRICKS,

                Petitioner and Appellant,

    v.

STATE OF MONTANA,

                Respondent and Respondent.

APPEAL FROM:    The District Court of the Nineteenth Judicial District,
In and For the County Lincoln, Cause No. DV 2004-067,
Honorable Michael C. Prezeau, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

            Kristina Neal, Assistant Appellate Defender, Helena, Montana

        For Respondent:

            Honorable Mike McGrath, Attorney General; C. Mark Fowler,
Assistant Attorney General, Helena, Montana

            Bernard G. Cassidy, County Attorney, Libby, Montana

Submitted on Briefs:   December 7, 2005

Decided:  January 31, 2006

Filed:

_____
Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1 On November 6, 2001, the State charged John Tice Hendricks with attempted deliberate homicide and aggravated assault. The District Court appointed Scott Spencer—who, in 1993, prosecuted Hendricks on a different charge while serving as Lincoln County Attorney—to serve as Hendricks's counsel. Hendricks pled not guilty; a jury subsequently found him guilty of aggravated assault. On May 12, 2004, Hendricks filed a petition for postconviction relief. The District Court issued an order denying the petition. Hendricks appeals the court's judgment.

¶2 We restate the issues as follows:

¶3 1. Is there *per se* ineffective assistance of counsel when appointed defense counsel previously prosecuted the defendant on another matter?

¶4 2. Is there *per se* ineffective assistance of counsel when appointed defense counsel works simultaneously as a city attorney and a county public defender in the same jurisdiction?

## BACKGROUND

¶5 In the early morning hours of October 26, 2001, Hendricks became involved in an altercation with Don Scott. During this altercation, Hendricks stabbed Scott with a kitchen knife. The knife entered Scott's right side between his ribs and penetrated his liver and diaphragm, causing severe physical injuries.

¶6 The State charged Hendricks with the felony offenses of attempted deliberated homicide and aggravated assault. Amy Guth, Administrator of the Lincoln County

2

Public Defender contract, moved the court to appoint Scott Spencer to represent Hendricks. At the time she made the appointment, Guth knew that Spencer had previously charged Hendricks with sale of dangerous drugs during his tenure as Lincoln County Attorney. *See State ex rel. Fletcher v. District Court* (1993), 260 Mont. 410, 859 P.2d 992. In that case, Hendricks, along with twenty-three other petitioners, moved to dismiss various drug cases and one burglary case. *Fletcher*, 260 Mont. at 412-13, 859 P.2d at 993. After the District Court denied their motion, the petitioners applied for a writ of supervisory control alleging outrageous government conduct. *Fletcher*, 260 Mont. at 412-13, 859 P.2d at 993. This Court ultimately dismissed the case and remanded it to the District Court without prejudice. *Fletcher*, 260 Mont. at 419, 859 P.2d at 997.

¶7    During Spencer's first meeting with Hendricks regarding the present case, Hendricks brought up the fact that Spencer had previously prosecuted him in the *Fletcher* case. According to Spencer, Hendricks "expressed concerns that because [Spencer] had prosecuted him that it would somehow carry over into [Spencer's] defense of him in this case." Spencer maintains, however, that by the time he finished explaining to Hendricks that the *Fletcher* case would have "no bearing" on his representation, Hendricks "didn't seem to have a problem" with his proceeding as counsel. Hendricks, on the other hand, claims that from the beginning, he "was unwilling to have [Spencer] as an attorney" and requested that Spencer remove himself as defense counsel. During the evidentiary hearing, Hendricks testified that he objected to Spencer representing him for "a number

3

of reasons," including that Spencer "had sent [him] to prison and then filed charges when [he] was ready to get out of prison . . . [he had] just been prejudiced by the man . . . [and that they didn't] have a good relationship just, you know, as people." Hendricks further testified that he called Guth's office to complain, but she informed him that it was Spencer's duty to inform the court of the conflict.

¶8 Pursuant to Spencer's representation, Hendricks pled not guilty. After a three-day trial, a jury found Hendricks guilty of aggravated assault, but not guilty of attempted deliberate homicide. On the same day the court sentenced Hendricks to twenty years in prison, Spencer moved to withdraw as Hendricks's attorney because "the working relationship between counsel and client has deteriorated to the point that no viable working relationship exists between attorney and client." The court appointed the Montana Appellate Defender Office to represent Hendricks for any appeal or postconviction relief.

¶9 Hendricks appealed his conviction, arguing that Spencer rendered ineffective assistance of counsel when he failed to raise a self-defense theory. This Court issued an opinion affirming Hendricks's conviction and dismissing his appeal without prejudice, concluding that because Hendricks's ineffective assistance of counsel claim could not be addressed without considering matters outside of the record, he could only raise this claim in a postconviction relief proceeding. *State v. Hendricks*, 2003 MT 223, ¶ 1, 317 Mont. 177, ¶ 1, 75 P.3d 1268, ¶ 1.

4

**STANDARD OF REVIEW**

¶10     This Court reviews a district court's denial of postconviction relief to determine whether the court's findings of fact are clearly erroneous and whether its conclusions of law are correct.  Claims of ineffective assistance of counsel are mixed questions of law and fact, which we review *de novo*.  *Thurston v. State*, 2004 MT 142, ¶ 8, 321 Mont. 411, ¶ 8, 91 P.3d 1259, ¶ 8.

**DISCUSSION**

¶11     **1.   Is there *per se* ineffective assistance of counsel when appointed defense counsel previously prosecuted the defendant on another matter?**

¶12     Hendricks asks this Court to adopt a rule that there is *per se* reversible conflict of interest when appointed defense counsel previously prosecuted the defendant on another matter.  A review of our precedent, however, does not support this approach.

¶13     In *State v. Deschon*, 2002 MT 16, ¶ 18, 308 Mont. 175, ¶ 18, 40 P.3d 391, ¶ 18, we addressed the issue of ineffective assistance of counsel due to attorney conflict of interest—although on different factual grounds.  In that case, Deschon argued that he received ineffective assistance of counsel because his attorney had a conflict of interest in representing him at the same time he represented one of Deschon's key defense witnesses.  *Deschon*, ¶ 15.  In reaching the conclusion that Deschon did not receive ineffective assistance of counsel, we determined that "[a] defendant claiming ineffective assistance of counsel due to a conflict of interest must show: (1) that counsel actively represented conflicting interests; and (2) that an actual conflict of interest adversely

5

affected counsel's performance." *Deschon*, ¶ 18. We emphasized that "[a]n actual conflict, as opposed to the mere possibility of a conflict, is necessary" and that "[s]uch conflict must be proved through a factual showing on the record." *Deschon*, ¶ 18. After reviewing the record, we concluded that an actual conflict did not exist. *Deschon*, ¶ 19. We further noted that even if an actual conflict did exist, defense counsel's performance was not adversely affected and, therefore, Deschon was not denied effective assistance of counsel. *Deschon*, ¶ 20.

¶14 In *Thurston*, we applied the same standard as set forth in *Deschon*. *Thurston*, ¶ 17. Thurston argued that his defense counsel had a conflict of interest because, during his previous tenure as Deputy Cascade County Attorney, he exchanged information about the investigation of Thurston's case. *Thurston*, ¶ 16. Although we have not adopted the American Bar Association's Standards for Criminal Justice, 4-3.5, *Thurston* cited to it, along with § 37-61-413, MCA, arguing that defense counsel should not have represented him after supposedly gaining knowledge of his case through counsel's former employment as a Deputy Cascade County Attorney. *Thurston*, ¶ 19.[1] We determined

---

[1]The American Bar Association's Standards for Criminal Justice Standard 4-3.5 states:
> (f) Defense counsel should not defend a criminal case in which counsel's partner or professional associate is or has been the prosecutor in the same case.
> (g) Defense counsel should not represent a criminal defendant in a jurisdiction in which he or she is also a prosecutor.
> (h) Defense counsel who formerly participated personally and substantially in the prosecution of a defendant should not thereafter represent any person in the same or a substantially related matter. Defense counsel who was formerly a prosecutor should not use confidential

that even though Standard 4-3.5, and § 37-61-413, MCA, supported Thurston's argument, there was no basis for reversal unless Thurston established that an "actual conflict" existed. *Thurston*, ¶ 20. Because we concluded that no evidence supported the notion that defense counsel's representation of Thurston was influenced by the suggested conflict, we affirmed the District Court's denial of Thurston's conflict of interest claim. *Thurston*, ¶ 20.

¶15 In this case, Hendricks argues that Spencer had a conflict of interest because he prosecuted Hendricks several years earlier while serving as Lincoln County Attorney. More specifically, Hendricks contends that because he, along with the other *Fletcher* petitioners, filed a motion and brief alleging outrageous government conduct, Spencer likely remembered Hendricks and "harbored resentment" against him. Hendricks's speculation regarding Spencer's state-of-mind does not amount to a factual showing on

---

information about a person acquired when defense counsel was a prosecutor in the representation of a client whose interests are adverse to that person in a matter.
ABA Standards on Criminal Justice, Standard 4-3.5(f)-(h), Conflicts of Interest (1993).

Section 37-61-413, MCA, states:
> **Former public prosecutors not to defend**. An attorney and counselor who has brought, carried on, aided, advocated, or prosecuted or has been in anywise connected with an action or special proceeding, civil or criminal, as attorney general, county attorney, or other public prosecutor, must not, at any time thereafter, directly or indirectly advise concerning, aid, or take any part in the defense thereof; or take or receive, either directly or indirectly, from a defendant therein or other person a fee, gratuity, or reward for or upon any cause, consideration, pretense, understanding or agreement, either express or implied, having relation thereto or to the prosecution or defense thereof.

7

the record that an "actual conflict" existed between counsel and the defendant. As we noted, "the mere possibility of a conflict" will not suffice; the "conflict must be proved through a factual showing on the record." *Deschon*, ¶ 18. Despite Hendricks's speculative allegations that Spencer "harbored resentment" against him, or that his representation was influenced by his having previously prosecuted Hendricks, there is nothing in the record supporting the assertion that an actual conflict existed.

¶16    Even assuming *arguendo* that an actual conflict of interest did exist, Hendricks fails to establish that the conflict adversely affected Spencer's performance resulting in ineffective assistance. In determining whether a defendant received ineffective assistance of counsel, we apply the *Strickland* test—that is, a defendant must first show that counsel's performance was deficient, and second, that he was prejudiced by counsel's deficient performance. *State v. Henderson*, 2004 MT 173, ¶ 5, ¶ 9, 322 Mont. 69, ¶ 5, ¶ 9, 93 P.3d 1231, ¶ 5, ¶ 9. *See Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct 2052, 80 L.Ed.2d 674. Hendricks argued to the District Court that Spencer provided ineffective assistance of counsel by: (1) failing to pursue the defense of justifiable use of force (self-defense); (2) not honoring Hendricks's request to be present during Spencer's witness interviews; and (3) failing to perform a courtroom demonstration the way that Hendricks wanted the demonstration conducted. Applying the second prong of the *Strickland* test, the District Court concluded that no prejudice resulted from Spencer's performance as counsel because, in not pursuing a self-defense theory, "Spencer made a strategic decision based upon sound logic," there was "no reason to believe that

8

Hendricks's presence during the interviews of any of the other witnesses would have helped his defense in any way," and there was "no likelihood that Hendricks would have been acquitted if the [court-room] demonstration had been performed to his liking." Moreover, the court found that "[b]ased upon Hendricks's demeanor and his response to questions, it seemed obvious . . . that Hendricks was prepared to say whatever he had to say to obtain a new trial." The court ultimately concluded that Spencer's testimony was more credible than Hendricks's. On appeal, we will not disturb a district court's determination of witness credibility; this determination rests exclusively within the province of the finder of fact. *State v. Boucher*, 1999 MT 102, ¶ 19, 294 Mont. 296, ¶ 19, 980 P.2d 1058, ¶ 19.

¶17 We hold that Hendricks has not shown that an actual conflict of interest existed. Even assuming *arguendo* that there was an actual conflict of interest, he has not satisfied the second prong of the *Strickland* test; that is, he has not shown that Spencer's representation was adversely affected or that Hendricks was prejudiced by the alleged conflict. Thus, Hendricks's ineffective assistance of counsel claim has no merit.

¶18 2. **Is there *per se* ineffective assistance of counsel when appointed defense counsel works simultaneously as a city attorney and a county public defender in the same jurisdiction?**

¶19 Hendricks also argues that Spencer had a conflict of interest because, while representing Hendricks in Lincoln County, Spencer simultaneously served as City Attorney in Libby—an overlapping jurisdiction. Arguing that "it is impossible to

9

speculate how the subtle and subconscious affect of the dual representation impacted Spencer," Hendricks contends that this Court should conclude there was structural error in Spencer's serving as city attorney and as his defense counsel. Accordingly, Hendricks asks this Court to adopt a *per se* rule that a city attorney is disqualified from representing an indigent criminal defendant in a county of overlapping jurisdiction. We decline to adopt such a rule. Instead, we apply the same standard set forth in Issue 1—that is, "[a] defendant claiming ineffective assistance of counsel due to a conflict of interest must show: (1) that counsel actively represented conflicting interests; and (2) that an actual conflict of interest adversely affected counsel's performance." *See* ¶ 13. Similar to Issue 1, we hold that there is nothing in the record supporting a conclusion that Spencer's work as a city attorney in the same jurisdiction in which he defended Hendricks resulted in an actual conflict that adversely affected his representation of Hendricks.

¶20    Affirmed.

/S/ W. WILLIAM LEAPHART

We concur:

/S/ KARLA M. GRAY
/S/ PATRICIA COTTER
/S/ JIM RICE

10

Justice James C. Nelson dissents.

¶21    I would reverse and remand for appointment of new counsel and a new trial on Issue 2.  I would, therefore, not reach Issue 1.

¶22    The Court's Opinion fails to apply the proper analysis in Issue 2.  There is an inherent or *per se* conflict of interest when an attorney defends a criminally accused person in one jurisdiction while, simultaneously, acting as prosecutor in an overlapping jurisdiction.  The error implicit in such an arrangement constitutes structural error and is, therefore, presumptively prejudicial.

¶23    During the time that Spencer was representing Hendricks as a county public defender, he was also working as the Libby City Attorney.  Libby is the county seat of Lincoln County, thus, both the Libby Police Department and the Lincoln County Sheriff's Office are located in that city.  Spencer admitted that the Libby Police Department officers and Lincoln County Sheriff's deputies assist each other on cases.  Spencer also admitted that, in his position as a city prosecutor, he would sometimes call sheriff's deputies as witnesses in his city prosecutions.  Spencer never discussed this conflict of interest with Hendricks, nor did he obtain a waiver of the conflict from his client.

¶24    While this Court has not previously addressed this issue, the American Bar Association, the Montana State Bar Ethics Committee, and sister jurisdictions have.

¶25    The American Bar Association's Standards for Criminal Justice provide that "[d]efense counsel should not represent a criminal defendant in a jurisdiction in which he

11

or she is also a prosecutor." *ABA Standards for Criminal Justice Prosecution Function and Defense Function* 4-3.5(g) (3d ed. 1993) (hereinafter *ABA Standards*). The Commentary to this Standard, in pertinent part, explains:

> There are, indeed, advantages to the operation of an adversary system in which lawyers can avoid being stereotyped in their roles. *In our system of institutionalized prosecution offices, it is difficult, if not impossible, however, for prosecutors to simultaneously appear in a defense role.* But it is feasible to have experienced defense counsel appointed as special prosecutors from time to time. The long-range benefits of such interchange, however, are such that lawyers who have been trained in prosecution offices should be encouraged to devote some period of their professional careers in defense work, whether privately or as public defenders, *after they have left prosecution offices*. Correspondingly, public defender staff members should be encouraged to move into prosecution offices. [Emphasis added.]

¶26  Ethics Opinion 010417 of the State Bar of Montana's Ethics Committee follows this Standard. The question addressed was: "May the county public defender continue to defend within the county while also criminally prosecuting on behalf of the city?" The Ethics Committee held that

> [a]n attorney may not simultaneously occupy the positions of a city attorney with prosecutorial functions and county public defender when the jurisdictions overlap. The proposed representation creates a conflict of interest of the type identified by Rule 1.7 of the Montana Rules of Professional Conduct.

¶27  Rule 1.7 of the Montana Rules of Professional Conduct prohibits conflicts of interest. Specifically, this Rule mandates that a lawyer shall not represent a client if the

representation of that client will be directly adverse to another client.[1] The Ethics Committee stated that "[a] criminal defendant's interests are, almost by definition, adverse to the interests of the political subdivision's (i.e., cities, towns and counties) law enforcement authority." The Ethics Committee went on to quote from Ethics Opinion 881130, noting that

> for the city attorney charged with public duties including the prosecution of crimes to accept employment in defense of one charged with crimes, would appear to place him in [a] position adverse to his public employer likely to destroy public confidence in him as a public officer and thus bring reproach to his profession, as well as to himself. This apparent conflict of interest should be avoided.

¶28 Clearly, our State Bar Ethics Committee was correct in its determination that a public prosecutor for a city cannot simultaneously serve as a county public defender in overlapping jurisdictions. "The basic duty defense counsel owes to the administration of justice and as an officer of the court is to serve as the accused's counselor and advocate with courage and devotion and to render effective, quality representation." *ABA Standards* 4-1.2(b). That we now approve of this obvious breach of Rule 1.7 of the Montana Rules of Professional Conduct denigrates the professional responsibility of criminal defense attorneys and diminishes their duty of loyalty to the accused. The Court's decision here does nothing to further higher ethical standards for criminal defense lawyers. Indeed, it accomplishes quite the opposite result.

---

[1] The version of Rule 1.7 interpreted by the Ethics Committee is somewhat different than the present version of the Rule. Notwithstanding, both versions prohibit lawyers from representing clients with directly adverse interests.

13

¶29　Other jurisdictions that have considered this issue agree. The law is well summarized and collected in *State v. Brown* (Utah 1992), 853 P.2d 851. In that case, our sister jurisdiction, Utah, reversed the defendant's conviction holding that as a matter of public policy and pursuant to the court's inherent supervisory authority over other courts, as well as its express power to govern the practice of law, counsel with concurrent prosecutorial obligations may not be appointed to defend indigent persons. *Brown,* 853 P.2d at 857.

¶30　The *Brown* court's rationale is instructive. The court first concluded that the vital interests of criminal justice are jeopardized when a city prosecutor is appointed to assist in the defense of a person accused of a crime. Next, noting that a criminal defendant is entitled to undivided loyalty from his attorney,[2] the court astutely observed that this duty is compromised when an attorney with prosecutorial responsibilities represents an indigent defendant--a practice also known as dual representation. Specifically, the court noted that the divided loyalty inherent in this practice is evident in various facets of representation and public perception. Distilled from the *Brown* court's discussion, these evils include:

- There will inevitably arise a struggle between, on the one hand, counsel's obligation to represent his client to the best of his ability and, on the other hand, a public prosecutor's natural inclination not to anger the very

---

[2] *Brown*, 853 P.2d at 857 (citing *Glasser v. United States* (1942), 315 U.S. 60, 75-76, 62 S.Ct. 457, 467, 86 L.Ed. 680, *reh'g denied sub nom*, *Kretske v. United States & Roth v. United States* (1942), 315 U.S. 827, 62 S.Ct. 637, 86 L.Ed. 1222. The court also relied on Rule 1.7 of the Utah Rules of Professional Conduct (which is nearly identical to that interpreted in Ethics Opinion 010417 referred to above) noting that undivided loyalty was an "underlying premise" of the Rule.

individuals whose assistance he relies upon in carrying out his prosecutorial responsibilities. The temptation might well arise not to be too hard on a police witness who is against your client today, but would be the star witness for your prosecution tomorrow.

- A municipality is an ancillary unit of state government and both city and state prosecutors deal interchangeably with law enforcement personnel from each jurisdiction. Whether state or municipal, prosecutors share the same loyalties.

- Counsel may hesitate to attack the constitutionality of laws he or she has sworn to uphold as a prosecutor. He may be loath to take a position as defense counsel which he would find embarrassing as a prosecutor.

- While counsel may intend to diligently represent his client's interests, it is impossible to determine what sort of unconscious influences may affect such advocacy. When matters of judgment and trial tactics are made in the name of the accused, a defense counsel with conflicted loyalties may be unable to establish the propriety of his actions. Such conflicts, whether consciously perceived or not, jeopardize the integrity of the criminal adjudication process.

- The defendant's interests may be further compromised because of his natural hesitancy in confiding fully in a prosecutor. For example, the defendant may have information regarding other crimes that he or she would not want the prosecutor to know. The defendant may not feel that he or she is fully protected from potential abuse of confidences placed in defense counsel who also wears a prosecutor's hat.

- Dual representation erodes public confidence in the criminal justice system which depends on diligently maintaining the appearance of fairness and impartiality in the adjudication process, in that:

  o An unavoidable appearance of impropriety is created when a prosecutor assists in the defense of an accused, as the public may perceive that the prosecutor, desiring to further his or her own professional career, may use connections and influence to obtain a favorable result for the defendant.

  o The public may also infer that the prosecutor will not jeopardize his or her "law and order" reputation by using vigorous defense tactics.

15

o The public may conclude that a prosecutor's vigorous defense of an accused will result in decreased support from law enforcement in future cases. A prosecutor who alienates the law enforcement agencies upon which he or she depends, compromises his or her prosecutorial responsibilities.

o Regardless of counsel's diligence, the inherent conflicts of the situation expose counsel to charges that the representation was not entirely faithful.

*Brown,* 853 P.2d at 857-59 (internal citations omitted). *Accord State v. White* (Tenn. 2003), 114 S.W.3d 469 (holding that counsel's dual roles as prosecutor and defense counsel in the same county were inherently antagonistic and, thus, created an actual conflict of interest that required disqualification); *State v. Ross* (Mo. 1992), 829 S.W.2d 948 (holding that the appearance of impropriety arising from fact that two members of the law firm which represented defendant in a civil case brought by assault victim were working part time as county prosecutors, necessitated disqualification of the entire prosecuting attorney's office, even without a showing of actual prejudice).

¶31 Finally, the *Brown* court, in contradiction to our decision here, held that because it would be very difficult to assess prejudice in cases involving dual representation, it would be unnecessary and ill-advised to pursue a case-by-case inquiry to weigh actual prejudice. Rather, there should be a *per se* rule of reversal whenever such dual representation is undertaken so as to prevent its recurrence. *Brown,* 853 P.2d at 859.

¶32 Similarly, in the case *sub judice*, and for the reasons referred to above, Spencer, who was involved in text-book dual representation, could not provide effective assistance of counsel to Hendricks. A *per se* rule of reversal is required because this type of error is

16

structural. Prejudice must, therefore, be presumed because of Spencer's inherent conflict of interest and divided loyalty.

¶33 Structural error is a defect in the framework within which a trial proceeds and, as such, undermines the fairness of the entire trial proceeding. Structural error is presumptively prejudicial. *State v. LaMere,* 2005 MT 118, ¶ 25, 327 Mont. 115, ¶ 25, 112 P.3d 1005, ¶ 25 (citing *State v. Van Kirk,* 2001 MT 184, ¶ 38, 306 Mont. 215, ¶ 38, 32 P.3d 735, ¶ 38).

¶34 As the United State Supreme Court stated in *Holloway v. Arkansas* (1978), 435 U.S. 475, 489, 98 S.Ct. 1173, 1181, 55 L.Ed.2d 426, the Sixth Amendment guarantee of the assistance of counsel is among those "constitutional rights so basic to a fair trial that their infraction can never be treated as harmless error." In *Holloway*, the Supreme Court, after finding that a conflict of interest existed between counsel and the defendant, held that reversal was required. "The right to have the assistance of counsel is too fundamental and absolute to allow courts to indulge in nice calculations as to the amount of prejudice arising from its denial." *Holloway,* 435 U.S. at 488, 98 S.Ct. at 1181. If a defendant's Sixth Amendment right to counsel is infringed, prejudice is presumed regardless of whether it was independently shown. Reversal is automatic. *Holloway,* 435 U.S. at 489, 98 S.Ct. at 1181 (citing *Gideon v. Wainwright* (1963), 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799; *Hamilton v. Alabama* (1961), 368 U.S. 52, 82 S.Ct. 157, 7 L.Ed.2d 114; *White v. Maryland* (1963), 373 U.S. 59, 83 S.Ct. 1050, 10 L.Ed.2d 193).

17

¶35 We have held that an accused's right to counsel under Article II, Section 24 of the Montana Constitution is broader than that under the Sixth Amendment of the United States Constitution. *State v. Garcia,* 2003 MT 211, ¶ 37, 317 Mont. 73, ¶ 37, 75 P.3d 313, ¶ 37 (citing *State v. Spang*, 2002 MT 120, ¶ 22, 310 Mont. 52, ¶ 22, 48 P.3d 727, ¶ 22). *Accord State v. Johnson* (1986), 221 Mont. 503, 514-15, 719 P.2d 1248, 1255; *Ranta v. State,* 1998 MT 95, 288 Mont. 391, 958 P.2d 670. Accordingly, under Montana's Constitution, Hendricks was even more clearly entitled to counsel free from the conflicts of interest and divided loyalties inherent where his defense counsel was also a prosecutor. Prejudice must be presumed. A *per se* rule of reversal is required because of the structural error implicit in dual representation.

¶36 This Court is constitutionally tasked with supervising not only the trial courts, but also the practice of law in this State. Art. VII, § 2, Mont. Const. Unfortunately, in declining to condemn the evils of dual representation and the violation of Rule 1.7 of the Montana Rules of Professional Conduct inherent in that practice, and in refusing to adopt a standard prohibiting this practice--a standard so fundamental that it is recognized by the American Bar Association, by the Ethics Committee of the State Bar of Montana, by the United States Supreme Court, and by numerous courts in sister jurisdictions--we have abrogated our supervisory responsibilities over both the trial courts and the Bar and, worse, our obligation to ensure that indigent criminal defendants receive effective assistance of counsel.

¶37  I strenuously urge our new Public Defender Commission and our new Chief Public Defender to rectify our default by adopting a state-wide standard prohibiting criminal defense attorneys from simultaneously acting as prosecutors.

¶38  I would reverse Hendricks' conviction; I would order that the trial court appoint conflict-free counsel to represent him; and I would remand for a new trial.

¶39  I dissent from our failure to do so.

/S/ JAMES C. NELSON

Justice John Warner joins in the dissent of Justice James C. Nelson.

/S/ JOHN WARNER